**STATE FARM FIRE & CASUALTY COMPANY, Appellant,**

v.

**Julie Kathleen GANDY, Individually and as Assignee of Ted Pearce, Appellee.**

No. 06–93–00055–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 27, 1994.

Decided May 25, 1994.

Rehearing Overruled July 6, 1994.

Michael W. Huddleston, Cooper & Huddleston, Dallas, for appellant.

Carl David Adams, Law Offices of Carl David Adams, Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

State Farm Fire & Casualty Company appeals from a district court judgment awarding damages against it for failing to provide an adequate defense for its insured, Ted Pearce, in a lawsuit filed against Pearce by his stepdaughter, Julie Gandy. Gandy had sued Pearce for damages resulting from his sexual abuse of her over a long period of time. An agreed judgment was entered in that case, awarding damages against Pearce of some $6,000,000.00. Gandy gave Pearce a covenant not to execute on the judgment, and Pearce in turn assigned to Gandy all of his rights against State Farm. Gandy then filed this suit against State Farm to recover damages Pearce suffered because of State Farm's failure to adequately defend him in her suit. Based on jury findings of negligence and violations of the DTPA,[1] judgment was rendered for Gandy against State Farm for $202,000.00 plus fifteen percent attorney's fees and interest. The jury refused to find that State Farm was grossly negligent or that it acted knowingly or unconscionably. The trial court also rendered summary judgment that there was no coverage under Pearce's policy from State Farm for his conduct toward Gandy.

State Farm contends generally that there is legally and factually insufficient evidence to support the jury findings of DTPA violations, negligence, agency, damages, and attorney's fees. It also contends that the covenant to limit execution on the judgment to claims Pearce has against his insurer does not apply to it and that, if it does apply to State Farm, it extinguishes any liability of State Farm. State Farm also contends that the trial court committed error in refusing to submit its requested jury questions on Pearce's contributory negligence and comparative bad faith. We overrule these contentions and affirm the judgment.

## FACTS

Gandy sued Pearce, alleging that he had repeatedly abused her sexually over a period of several years, specifically on 325 separate occasions. During the time of the abuse, Pearce's home was insured by State Farm, and Gandy alleged that some of the acts occurred there. Pearce, thinking that his homeowner's insurance policy would cover his liability for any tortious acts committed by him at his home, notified State Farm of Gandy's suit, and asked that it defend him. While State Farm was considering what to do about Pearce's request, Pearce engaged E. Ray Andrews, an attorney who was defending him in the criminal prosecution that had been filed because of Gandy's allegations, to act as his attorney in Gandy's civil suit. Pearce knew that Andrews was strictly a criminal attorney and did not do civil trial work. Andrews had specialized in criminal law for over twenty-five years and is presently a district attorney. Andrews testified at the trial of this case that he had never practiced civil law and did not do civil trial work, and that he merely filed an answer for Pearce in Gandy's civil suit as a "friendship sort of deal" for Pearce.

State Farm wrote Pearce on February 11, 1991, that "[t]here is a question as to whether this company is obligated to defend or indemnify you" in the litigation filed by Gandy. The letter further advised Pearce that State Farm reserved the right to deny coverage if its investigation revealed a lack of coverage and that, in investigating the claim, it would "assume that it is acceptable for us to continue to handle the case on these terms."

Pearce testified that he discussed the matter orally with State Farm representatives, who told him that they believed State Farm would provide him a defense. The first written indication that State Farm had decided to do so is in the letter it mailed to both Andrews and Pearce on June 24, 1991, some six months after Gandy's suit was filed, in which State Farm advised that it had decided to defend Pearce but reserved its right to deny coverage. That letter reads as follows:

> Please be advised that State Farm has made the decision to defend Ted Pearce under a Reservation of Rights. The cover-

---

**1.** Tex.Bus. & Com.Code Ann. §§ 17.41, et seq. (Vernon 1987 & Supp.1994).

age questions we will continue to reserve are:

1. There is a question as to whether there was a policy in force on the date of the loss.

2. Coverage D, Section II Liability; shall not apply to bodily injury or property damage caused intentionally by or at the direction of the insured.

Additionally, the insuring agreement states:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages."

To the extent that any attempt is made to impose liability on one spouse for the tort of the other, there may be no coverage.

Also, please be advised State Farm will be filing a Declaratory Relief Action, asking the court to resolve the issues of coverage in this matter.

If you have any questions with regards (sic) to the above, please feel free to contact Claim Representative Beckey Hukill at (214)250–5214.

Pearce testified in some detail about his understanding of the meaning of the June 24 letter and his difficulties in determining exactly what State Farm intended to do about providing him a defense. State Farm later sent another letter dated July 2, 1991, to Andrews, directing him to send his bills to State Farm. That letter reads as follows:

This letter is to inform you that I will be handling Mr. Ted Pearce's file in regards (sic) to the negligent (sic) allegations filed against him by Julie Kathleen Gandy.

You should direct your fee invoices to my attention for payment. Your fee invoices need to be itemized by date and activity, and calculated to the nearest tenth of an hour.

I request you keep me advised on the progress of the lawsuit from this point on. Please understand my only interest in this case is to work with you on the defense of Mr. Ted Pearce.

Please feel free to call me at any time to discuss the case.

Interrogatories in the Gandy suit were served on Pearce and improperly answered by Andrews. Gandy's counsel filed a motion to compel on August 2, 1991. A hearing was held. Pearce and Andrews failed to appear. Andrews filed a motion to withdraw as Pearce's attorney on August 22. In the meantime, the court had set September 30 as a hearing date for Gandy's motion for sanctions. Before that time, Pearce engaged a replacement attorney, Howard Pattison, to represent him in the suit. Pattison attended the September 30 hearing and convinced the judge to delay his ruling on sanctions. Pattison testified at this trial that he believed, based on previous counsel's unprofessional failures, that the defense could have survived the sanctions hearing. But Pearce, who had by this time concluded that State Farm had refused to do anything except pay Andrews' bills, decided to settle the case.

Pattison and Gandy's attorney fashioned an agreed judgment awarding Gandy actual and punitive damages of over $6,000,000.00, including interest and attorney's fees, against Pearce. The judgment was approved and rendered by the court solely on the agreement of counsel and without a trial or any evidence being presented. Contemporaneously with and in consideration for the judgment, Pearce assigned Gandy all of his rights in causes of action that he had or may have against State Farm or any other insurer, for negligence, bad faith, failure to defend, breach of warranty or fiduciary duty, as well as all other claims arising out of the acts and omissions of the insurers. Gandy executed, and the agreed judgment approved, a covenant to limit execution on the judgment in return for Pearce's assignment of his rights to Gandy. State Farm was not a party to the settlement discussions and was completely unaware of the agreed judgment until it received a copy of it in the mail.

### THE PRESENT SUIT

In this case, Gandy sued State Farm in her status as the assignee of Pearce on the basis that State Farm failed to provide Pearce an adequate defense to her suit and for recovery on Pearce's insurance policy. Gandy also joined Andrews as a defendant, but she used

him as a witness in her case against State Farm and nonsuited her cause of action against him on the morning he was scheduled to testify.

Although the trial court rendered summary judgment that State Farm's policy did not cover the injuries to Gandy from Pearce's intentional acts, the jury found that State Farm was negligent in handling Pearce's defense and that the same negligent acts violated the DTPA by constituting false, misleading, and deceptive acts or practices. The jury also found that Andrews was the agent of State Farm with respect to Pearce's defense. The jury found Pearce's actual damages to be $200,000.00 and set attorney's fees at fifteen percent of that amount. Pursuant to the DTPA, the trial court added $2,000.00 to the damage award and rendered judgment accordingly.

## DECEPTIVE TRADE PRACTICES

We first examine State Farm's contention that the jury's findings on Gandy's DTPA claims are not supported by the evidence. The DTPA claim was not based on the insurance contract. Rather, Gandy alleged that State Farm committed deceptive practices in statements made to Pearce about its relationship with Andrews, Pearce's first attorney, and in handling Pearce's defense in general.

■ In a review of the sufficiency of the evidence to support jury findings, we review the legal sufficiency of the evidence under the standard set out in *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and the factual sufficiency under the standard set out in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). Thus, we will first examine the record for any probative evidence to support the findings, ignoring all contrary evidence. If we find some probative evidence, we will then test the factual sufficiency of that evidence by examining the entire record to determine whether the findings are clearly wrong and unjust.

## STANDING UNDER THE DTPA

■ State Farm contends that Pearce was not a consumer within the meaning of the Deceptive Trade Practices Act and thus had no standing to bring suit under that Act.

■ To be a consumer under the Deceptive Trade Practices–Consumer Protection Act, the plaintiff must have sought or acquired goods or services by purchase or lease, and the goods or services sought must form the basis of the plaintiff's complaint. TEX.BUS. & COM. CODE ANN. § 17.45(4) (Vernon 1987); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981). The plaintiff need not seek or acquire the goods or services from the defendant in order to be a consumer. The Act focuses not on privity, but on the transaction. *Cameron v. Terrell & Garrett, Inc., supra*. Here, Pearce sought legal services from Andrews, and those services formed the basis of his complaint. State Farm involved itself in the transaction between Pearce and Andrews, and therefore could be liable to Pearce if its actions constituted deceptive trade practices as defined by the Act. *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705 (Tex.1983); *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382 (Tex.1982); *Megason v. Red River Employees Federal Credit Union*, 868 S.W.2d 871 (Tex.App.—Texarkana 1993, no writ).

The jury also found that an agency relationship existed between State Farm and Andrews. State Farm contends that this finding is supported by legally and factually insufficient evidence. We find it unnecessary to rule on this question, because an agency relationship is not necessary to render State Farm liable under the Deceptive Trade Practices Act for practices it may have committed in connection with Andrews' legal services. As noted earlier, it is not necessary that Pearce sought legal services from State Farm, only that State Farm was involved in the transaction whereby Pearce sought legal services from Andrews. Regardless of any agency relationship between State Farm and Andrews, if representations were made or confusion was caused by State Farm concerning the legal services in question, Pearce was in the position of a consumer and was entitled to recover against State Farm for those deceptive practices.

## VIOLATIONS OF THE DTPA

■ State Farm next argues that there is legally and factually insufficient evidence to support the jury findings that it engaged in false, misleading, and deceptive acts and practices by causing confusion and misrepresenting the relationship between Andrews and State Farm.[2] Gandy argues that the deception occurred when State Farm failed to tell Pearce that Andrews was not his only alternative for legal counsel and that he had the right to select and control his own counsel with State Farm bearing the expense. Both letters sent by State Farm, as well as Pearce's testimony about the oral conversations he had with State Farm representatives, constitute evidence tending to support the jury's finding that State Farm misled Pearce by causing confusion and misunderstanding about its affiliation with Andrews and the nature of the defense it had agreed to provide for him. State Farm's letters expressly agreed to provide a defense to Pearce; yet State Farm did not, either in its letters or in its oral communications, explicitly set out the extent of its responsibility, its relationship with Andrews, or Pearce's options to select counsel of his own. Instead, State Farm's communications with Pearce used terms of art and insurance language not familiar to those outside the insurance industry or the legal community to describe its relationship with him and left Pearce's position unsettled and unclear.

The Deceptive Trade Practices Act states that a false, misleading, or deceptive act includes causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, or as to the affiliation, connection or association with another. TEX.BUS. & COM.CODE ANN. § 17.-46(b)(2), (3) (Vernon Supp.1994). The evidence discussed heretofore constitutes some, and we believe sufficient, evidence to support the jury's findings in this regard.

## NEGLIGENCE

■ State Farm next contends that the evidence is legally and factually insufficient to support the jury's finding that State Farm was negligent.[3] State Farm argues that it had no duty to Pearce and thus could not be liable in damages to him. The court's rendition of a partial summary judgment in State Farm's favor on the question of policy coverage eliminates any duty to defend Pearce under the terms of the insurance contract. But since State Farm wrote to both Pearce and his attorney stating that it would defend Pearce under a reservation of rights, it can be concluded that State Farm assumed some duty to Pearce. The question is the extent of that duty. State Farm argues that it only assumed the duty to pay for the legal services and that it did not and could not assume

2. *QUESTION NO. 3*

Did State Farm Fire & Casualty Company engage in any false, misleading, or deceptive act or practice that was a producing cause of damage to Ted Pearce?

In answering this question consider the following alleged conduct of State Farm Fire & Casualty Company:

engaging in false, misleading or deceptive acts or practices by:

(1) causing confusion or misunderstanding as [to] the source, sponsorship, or approval of E. Ray Andrews' services; or

(2) causing confusion or misunderstanding as to the affiliation, connection, or association with E. Ray Andrews; or

(3) representing that E. Ray Andrews' services had sponsorship, approval or characteristics which they did not have; or

(4) representing that E. Ray Andrews had a sponsorship, approval, status, affiliation, or connection which he did not have; or

(5) failing to disclose information concerning E. Ray Andrews' services which was known at the time of the transaction when such failure to disclose such information was intended to induce Pearce into a transaction which he would not have entered had the information been disclosed.

Answer "yes" or "no."

ANSWER: Yes.

3. The negligence question merely asked:

Do you find that any of the following were (a) negligent, and, if so, (b) that such negligence was a proximate cause of damage, if any, to Ted Pearce?

In considering the negligence, if any, of E. Ray Andrews consider only the conduct of E. Ray Andrews after June 24, 1991.

Answer "yes" or "no" as to each listed person or entity.

| | Yes | No |
|---|---|---|
| State Farm Fire and Casualty Company | ___ | ___ |
| E. Ray Andrews | ___ | ___ |

the responsibility of directing the defense or supervising Pearce's attorney in the litigation.

One who owes no legal duty to another, but who gratuitously assumes a duty to act toward that person, must discharge the duty so assumed with reasonable care to prevent harm to that person or to others. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983); *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116 (Tex.1976); *Fox v. Dallas Hotel Co.*, 111 Tex. 461, 240 S.W. 517 (1922); *see also Seay v. Travelers Indem. Co.*, 730 S.W.2d 774 (Tex.App.—Dallas 1987, no writ). Since State Farm assumed a duty not required by law or its insurance contract, we must determine whether the evidence is sufficient to support the jury's finding that State Farm breached that duty. State Farm argues that a breach, even of an assumed duty, cannot be shown unless the plaintiff establishes the standard of care for a reasonably prudent insurer acting under the same or similar circumstances. It further argues that Gandy failed to establish such a standard here because her expert witness on the issue, attorney Mark McMahon, was not properly qualified as an expert and should not have been permitted to testify.

The admission of expert testimony is governed by Tex.R.Civ.Evid. 702–706. Rule 702 provides that, if specialized knowledge will assist the trier of fact to understand evidence or determine a fact in issue, a witness may testify concerning that fact, provided he or she is qualified as an expert by knowledge, skill, experience, training, or education. McMahon was questioned at length about his background, experience, and training that would give him special knowledge about the matters in issue. Among other things, he testified that he had worked as outside counsel for insurance firms defending insureds, and he further testified about his experience as a personal injury lawyer and his educational and experiential background in the context of insurance-related lawsuits.

The question of whether a witness is qualified to testify as an expert is a matter that is within the trial court's discretion. The court's determination of whether to admit the testimony will not be disturbed on appeal unless a clear abuse of discretion is demonstrated. State Farm has not shown an abuse of discretion here. Accordingly, there is evidence that would establish the standard of care for a reasonably prudent insurer, as requiring it to fully inform its insured regarding the extent of its representation, as well as the extent of the insured's rights to select his own counsel and control the details of the representation. We find the evidence here sufficient to allow the jury to find that State Farm failed to use reasonable care in discharging its assumed duty to represent Pearce. The thrust of Gandy's claim that Pearce was inadequately defended is that State Farm failed to adequately inform Pearce of its decision and the extent of its assumption of the duty. The negligent conduct under this theory is State Farm's failure to adequately explain to Pearce what its duties and rights were and what his duties and rights were. Gandy contends that the letters State Farm sent to Pearce and Andrews were positively misleading. The letters do not clearly inform Pearce of his right to hire and fire his own attorneys and that State Farm would bear the costs. Pearce testified that he believed State Farm had only agreed to pay Andrews and that it would not pay other attorneys. There is no evidence that anyone ever informed Pearce to the contrary. Under this theory of the case, expert testimony is not required. The question is whether the letters written by the insurance company and the oral representations of its agents were confusing and misleading to the average person such as Pearce.

Pearce testified that as a result of State Farm's failure to communicate and adequately explain his rights, he believed that he had been abandoned by the insurance company, and he determined that he should make the best deal he could to get out of the lawsuit filed by Gandy, because he had no money to hire another attorney, because he was sick of the constant litigation, and because he knew that he was judgment proof. This constitutes some evidence in support of the jury's finding of negligence and proximate cause, and we find it to be sufficient evidence to support the jury finding.

## JURY CHARGE

█ State Farm next argues that the trial court erred by refusing to submit its requested jury questions on contributory negligence and comparative bad faith. It requested questions asking the jury to find who was negligent, including both Pearce and Andrews as alternative tortfeasors, and asking the jury to apportion damages among State Farm, Ted Pearce, and Andrews. There is some evidence that Pearce was negligent in his selection of Andrews as his attorney to represent him in the civil suit, in his failure to supervise Andrews in any degree, in his failure to make reasonable inquiries of State Farm as to the extent of his responsibilities under the arrangement, and in his failure to obtain different counsel after it became clear to him that Andrews was incapable of properly handling the civil case in a professional manner.

Contributory negligence should be submitted in a case of this type if the issue is supported by the evidence. *William M. Mercer, Inc. v. Woods,* 717 S.W.2d 391 (Tex. App.—Texarkana 1986), *aff'd in part and rev'd in part on other grounds,* 769 S.W.2d 515 (Tex.1988). Thus, unless there is some other reason for the trial court's failure to submit the question, its refusal to do so was error.

█ Gandy contends that the jury questions were properly refused because State Farm never pleaded that Pearce was contributorily negligent. Tex.R.Civ.P. 278. State Farm pleaded that "the Plaintiff's conduct in this case was the result of comparative bad faith, negligence and/or contributory responsibility." Although Pearce was technically not the plaintiff in this case (Gandy was the plaintiff), Gandy's cause of action was as the assignee of Pearce, was derivative of his rights, and involved acts done to and by Pearce. We believe State Farm's pleading of contributory negligence by the "plaintiff" was sufficient to give fair notice to Gandy that it intended to prove negligence against Pearce,

the original injured party. It was error for the trial court to fail to submit the issue.

## DAMAGES

█ State Farm next argues that Gandy failed to prove that State Farm's acts and omissions proximately caused Pearce damage. Although the jury finding of $200,-000.00 damages is directly linked to the question asking whether State Farm was negligent, there was no further instruction or question that would provide guidance for this court in determining the damage on which the amount is predicated.[4]

Gandy's main theory was that the amount of the agreed judgment she took against Pearce, some $6,000,000.00, constituted actual damages to Pearce. McMahon testified that if a competent attorney had pursued Pearce's defense in Gandy's suit against him, although it was highly improbable that Pearce could have prevailed on his defense that he never sexually abused Gandy, it was probable that the judgment would have been far less than the $6,000,000.00 settlement. He suggested that a $2,000,000.00 verdict would have been a more likely outcome.

A judgment rendered against a person may damage him in several ways. It may adversely affect his credit, his reputation, and his ability to conduct a profession or a business. It may affect the marketability and value of his property, and it may cause him to suffer mental anguish. Gandy produced evidence that she had given Pearce a covenant not to execute on the judgment. An important question before us, then, is whether the *bare amount* of the judgment, aside from its *consequential effects,* damages the named judgment debtor when an unequivocal covenant not to execute on the judgment has been executed. Were we facing this as a question of first impression, we would say no. Since Pearce will never have to pay any part of Gandy's judgment, its bare amount cannot damage him. Its *existence* could damage him, as noted earlier, in the

---

4. Question No. 7 reads as follows:
   What sum of money, if paid now in cash, would fairly and reasonably compensate Ted Pearce for his damages, if any, resulting from the conduct in question.

Answer in dollars and cents for damages, if any.
Answer: Two Hundred Thousand Dollars

form of credit, reputation, business, property, and mental anguish.

The amount of the judgment in a case like this, where a covenant not to execute is given contemporaneously with and as a part of a settlement and agreed judgment, cannot constitute damage to the judgment debtor. Allowing an assignee of the named judgment debtor in such a case to collect all or part of the judgment amount perpetrates a fraud on the court, because it bases the recovery on an untruth, i.e., that the judgment debtor may have to pay the judgment. *See Whatley v. City of Dallas*, 758 S.W.2d 301 (Tex.App.— Dallas 1988, writ denied); *Garcia v. American Physicians Ins. Exch.*, 812 S.W.2d 25 (Tex.App.—San Antonio 1991) (Peoples, J. dissenting), *rev'd*, 876 S.W.2d 842 (Tex.1994). Such a result should be against public policy, because it allows, as here, parties to take a sham [5] judgment by agreement, without any trial or evidence concerning the merits, and then collect all or a part of that judgment from a third party. Allowing recovery in such a case encourages fraud and collusion and corrupts the judicial process by basing the recovery on a fiction. It is true that there is no finding of fraud or collusion between Pearce and Gandy in this case, and it is also true that Gandy was undoubtedly injured by Pearce's actions. But the fact remains that the courts are being used to perpetrate and fund an untruth—that Pearce was damaged by the bare amount of the judgment.[6]

Despite our protestations noted above, it appears that our Supreme Court is of the opinion that, even when there is a covenant not to execute, the amount of the judgment can be evidence of some damage to the one who suffered the judgment. *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842.[7] It is difficult to reconcile such a view with the Supreme Court's holding that "Mary Carter" agreements are against public policy because they "skew the trial process, mislead the jury, promote unethical collusion among nominal adversaries, and create the likelihood that a less culpable defendant will be hit with the full judgment." *Elbaor v. Smith*, 845 S.W.2d 240 (Tex.1992). To the extent that our Supreme Court would hold that the bare *amount* of the judgment constitutes damage in a case like this, we believe it is wrong, and we urge it to correct the matter when it has the opportunity. Until it does so, however, we defer to what we believe is the stated law and hold that the judgment here is some evidence of damage to Pearce, even though the judgment can never be collected from him, and is sufficient evidence to support the jury's finding.

■■ In our original opinion, we stated that there was no evidence of any other damage from the judgment. Gandy's response to State Farm's motion for rehearing convinces us we were wrong in that conclusion.

Pierce testified that, had he not been misled by State Farm and, had he been given reasonable representation, he could have won his civil suit. He also testified about the frustration he suffered as a result of State Farm's acts and the stigma that attached to him by being labeled a child sexual molester, and that it all made it impossible for him to do business with reputable companies and put him in a "minimal wage position." On reconsideration, we believe this is some evidence of damage to Pearce's reputation, credit, and ability to conduct his business. It is true that, when testifying to these matters,

---

5. The judgment is a sham because it is not what it is represented to be. It cannot be collected from the judgment debtor, and that was the parties' intention when the judgment was taken.

6. Prohibiting this type of arrangement would not inhibit settlements. The insurance company would still have an incentive to settle because it would face potential liability for damage to credit, reputation, property, and for mental anguish. Allowing recovery for the *amount* of the judgment is not necessary to encourage insurance

companies to give careful consideration to the interests of their insureds.

7. The Supreme Court so held in its first opinion in *Garcia*. On motion for rehearing, it withdrew its first opinion and issued a new opinion. In its new opinion, it expressly declined to rule on the question whether a pretrial nonexecution agreement negated all damages from the amount of the judgment. The dissent in *Garcia* would hold that there would still be damages in that set of facts.

Pearce related them to the criminal charge against him, to which he pleaded nolo contendere. In his mind, however, he always considered the criminal and civil cases as one charge (even to the point of thinking that State Farm was going to assist in the defense of the criminal action), and he testified that his "giving up" and settling the charges was the result of State Farm's conduct. Taking a liberal view of his, a layman's, testimony, we believe a fair reading of it can be construed as evidence that the civil judgment, as well as the criminal charge, adversely affected his mental state, reputation, and business. Thus, there is sufficient evidence of damage to him other than the mere amount of the judgment.

### ATTORNEY'S FEES

State Farm next argues legal and factual insufficiency of the evidence to support the jury's finding of attorney's fees. The reasonableness of attorney's fees is a matter for the trier of fact. They must be reasonable under the particular circumstances of the case, and they must bear some reasonable relationship to the amount in controversy. *Armstrong Forest Products v. Redempco*, 818 S.W.2d 446 (Tex.App.—Texarkana 1991, writ denied). Here, the reasonableness of attorney's fees is supported by the expert testimony of Carl Adams, Gandy's attorney. He testified that this was the type of case that was usually tried on a contingency fee basis, explained the purpose of the contingency fees, and opined that a fee of thirty-five percent of the ultimate recovery would be reasonable. Accordingly, there was evidence from which the jury could determine what attorney's fees would be reasonable in this case. The amount awarded by the jury for attorney's fees reflects its disagreement with the thirty-five percent figure, since it awarded only fifteen percent of the recovery. However, the jury is not bound by the expert testimony and may award a lesser amount. The evidence is sufficient to support the jury finding.

### COVENANT NOT TO EXECUTE

State Farm contends that the covenant not to execute on the judgment except on claims Pearce has against his insurers does not apply to State Farm as an entity because it explicitly covers claims that Pearce might have against "State Farm *Insurance Company*" (emphasis added). This suit was not brought against State Farm Insurance Company, but against State Farm *Fire & Casualty Company*.

We find no indication that this argument was raised at trial or was in any way brought to the attention of the trial court. Accordingly, it cannot be raised for the first time on appeal. Tex.R.App.P. 50, 52. Moreover, the obvious purpose of the instrument was to cover claims Pearce had against his insurer, which was indisputably State Farm Fire & Casualty Company. The reference to State Farm Insurance Company was obviously an inadvertent misnomer, and the intent of the covenant is clear. Additionally, the document covers all claims Pearce had against "all other insurers" as well.

### GANDY'S CROSS–POINTS

Gandy argues in two cross-points that the trial court erred by granting a partial summary judgment in favor of State Farm on the issue of its liability under the insurance policy to defend Pearce, and also by failing to grant her own motion for summary judgment on the same issue. The trial court granted summary judgment in favor of State Farm because Pearce's acts against Gandy were intentional and were therefore excluded from coverage under Exclusion 5 of Section 2, Coverage D—Personal Liability contained in the insurance policy. That exclusion reads as follows:

Coverage D shall not apply:

> .     .     .     .     .

(5) to bodily injury or property damage caused intentionally by or at the direction of the insured.

Intent to injure may be inferred when the character of the act done is such that the degree of certainty that the conduct will cause injury is sufficiently great to justify an inference as a matter of law that the actor intended to cause injury. The more likely that harm will result from the conduct, the more likely it is that intent to harm may

**140**

be inferred as a matter of law. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 379 (Tex.1993). Thus, when sexual abuse is committed on a minor, the likelihood of harm is sufficiently certain that intent may be inferred as a matter of law.[8]

The evidence supporting the summary judgment is uncontroverted. Applying to the summary judgment evidence the analysis used in the cited cases and recently reviewed by our Supreme Court, we hold that intent to harm is necessarily inferred in the present situation. Consequently, the trial court properly granted summary judgment in favor of State Farm on this issue.

### DISPOSITION

The trial court was in error when it failed to submit an issue on contributory negligence. But because the judgment may be affirmed on the basis of DTPA violations, the negligence cause of action is not necessary to the judgment and reversal on the point of contributory negligence is not necessary.

For the reasons stated, the judgment of the trial court is affirmed.

---

**8.** The following cases from other jurisdictions hold that intent may be inferred when an adult living in a household sexually abuses a minor. *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984); *Allstate Ins. Co. v. Troelstrup*, 789 P.2d 415 (Colo.1990); *Roe v. State Farm Fire & Cas. Co.*, 259 Ga. 42, 376 S.E.2d 876 (1989); *Perreault v. Maine Bonding & Cas. Co.*, 568 A.2d 1100 (Me.1990); *Harpy v. Nationwide Mut. Fire Ins. Co.*, 76 Md.App. 474, 545 A.2d 718 (1988); *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 558 N.E.2d 958 (1990); *Linebaugh v. Berdish*, 144 Mich.App. 750, 376 N.W.2d 400 (1985); *State Farm Fire and Cas. v. Williams*, 355 N.W.2d 421 (Minn.1984); *Fireman's Fund Ins. Co. v. Hill*, 314 N.W.2d 834 (Minn.1982); *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986); *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365 (1992); *Rodriguez v. Williams*, 107 Wash.2d 381, 729 P.2d 627 (1986); *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988); *Loveridge v. Chartier*, 161 Wis.2d 150, 468 N.W.2d 146 (1991); *N.N. v. Moraine Mut. Ins. Co.*, 153 Wis.2d 84, 450 N.W.2d 445 (1990).