TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-97-00580-CV






First General Realty Corporation, et al., Appellants



v.



Maryland Casualty Company, et al., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 428,878, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 We withdraw our original opinion and judgment issued August 13, 1998, and
substitute this one in its place. The main issue presented in this appeal is whether an agreed
judgment as to liability between a third party and an insured is binding on the insurer. Appellants
First General Realty Corporation, et al. sued appellees Maryland Casualty Company, et al. for
damages under several theories and requested declaratory judgment that appellees were obligated
to provide insurance coverage. After a bench trial, the trial court rendered a take-nothing
judgment in favor of appellees. Appellants filed a motion for new trial which the trial court
denied; they now appeal that order. We will affirm the trial-court judgment.


BACKGROUND The appellants in this cause consist of the plaintiffs (the "Developers") (1) and the
intervenors (the "Homeowners"). (2) The appellees are the defendant insurance companies (3) which
we refer to collectively as "Maryland." 


The Stipulated Facts

 Both appellants and appellees stipulate to the following facts: 

 The Developers were involved in the development of the River Plantation
subdivision in Montgomery County, Texas. The Homeowners are various individuals who
purchased property in River Plantation prior to 1985. A series of floods affected the River
Plantation subdivision, particularly in 1973, 1976, 1979, and 1983. The floods caused physical
damage to the property and structures, and a substantial number of Homeowners suffered a loss
of the use and enjoyment of their land or diminution in property value.

 The Homeowners brought suit against the Developers in 1985 (the "Thompson"
suit), (4) alleging that various wrongful acts, including negligence, caused them to suffer damages
in 1983. In a subsequent petition, they alleged that prior to and during 1973, the Developers were
negligent in failing to disclose to prospective purchasers that certain sections of the subdivision
had a propensity to flood. The Fireman's Fund Insurance Company, which had issued an
occurrence-type commercial comprehensive general liability policy insuring some of the
Developers, assumed the primary defense of the Thompson suit.

 Maryland had written policies of primary and excess insurance for the Developers
for the policy periods in 1973, 1974, 1975, and 1976. Maryland acknowledges that the 1973 flood
was an "occurrence" as defined in its primary policy and excess policy in existence at that time
and that coverage for the 1973 flood would be provided under both policies. (5) 

 The parties agree that the Developers had notice of claims by Homeowners arising
by reason of the 1973 flood during the 1973-74 time frame. (6) However, Maryland did not receive
notice of any claims under its 1973 general liability policy until July 1987. An attorney for the
Developers sent a letter notifying Maryland of the Homeowners' claims against the Developers
in the Thompson suit and enclosed a copy of the Fourth Amended Petition which was the first
pleading to assert any occurrence in 1973 or claim involving the 1973 flood. (7) Maryland
participated in some joint defense meetings and settlement discussions with the Developers and
the Homeowners between 1987 and 1990. Maryland undertook limited investigation of the claims;
ultimately, Maryland did not provide the Developers with a defense to the Thompson suit and
made no payment toward settlement of the Homeowner's claims. (8) No Maryland policy provided
coverage for the 1979 and 1983 claims asserted.

 In December 1990, the Homeowners and the Developers entered into a "Covenant
Not to Execute, Indemnification Agreement, and Assignment of Claims" agreement (the
"Covenant"). Pursuant to the Covenant, the Homeowners essentially agreed to release the
Developers from liability except for the period from June 1972 to May 1981, and the Developers
assigned to the Homeowners all their claims and causes of action against their insurers, specifically
their claims against Maryland. The Homeowners received $4,725,000 and agreed not to execute
any judgment against the Developers with the understanding that the judgment would be
enforceable only against Maryland. Maryland was not a party to the Covenant. The Homeowners
who received the funds included individuals who owned improved property at the time of the 1973
flood, individuals who owned unimproved property at the time of the 1973 flood, and individuals 
who did not own any property at River Plantation at that time. In May 1991, the Montgomery
County district court in the Thompson suit rendered judgment for the Homeowners in the amount
of $9,011,894 as actual damages, which included physical damage and diminution in value from
floods occurring from 1973 to 1983.


The Instant Suit

 In October 1987, the Developers brought a declaratory-judgment action against
Maryland requesting a determination that coverage under Maryland's policies existed and that
Maryland was obligated to provide a defense in the Thompson suit. The Homeowners intervened
in 1991. After the Covenant was executed and judgment in the Thompson suit was rendered,
appellants amended their pleadings to seek coverage from Maryland for some portion of the nine-million dollar Thompson judgment. Appellants also alleged that Maryland had failed to provide
a defense, negligently failed to accept settlement, negligently provided a defense in violation of
the DTPA, and violated the Texas Insurance Code in handling the defense. Maryland then
counterclaimed by requesting a declaratory judgment as to its obligations, duties, and rights under
the insurance policies as well as its liabilities, if any, for the Thompson judgment.

 Following a bench trial in 1997, the trial court made several findings of fact and
conclusions of law including: (1) Maryland did not meet the test set out in State Farm Fire &
Casualty Co. v. Gandy, 925 S.W.2d 696 (Tex. 1996), to invalidate the assignment between the
Developers and the Homeowners; (2) the judgment and findings in the Thompson suit were not
binding; and (3) the Homeowners' claims asserted in the Thompson suit and in this cause were not
based on a continuing tort and were therefore barred by the statute of limitations. The court
expressly declined to reach the remaining issues in the case. The trial court entered a take-nothing
judgment in favor of Maryland and denied appellants' motion for new trial.


DISCUSSION

Relitigation of Liability

 Appellants raise several complaints in their first issue, particularly that the trial
court erred by allowing the Developers' liability in the underlying suit to be relitigated. The
essence of this complaint is that the trial court erred in concluding that the final judgment in the
Thompson suit was not binding. Appellants apparently wish to obtain insurance coverage for the
damage caused by the flooding from 1973-1983 by holding Maryland to the final judgment in
Thompson that Maryland's insured was liable in an amount over nine million dollars. Maryland
argues that the Homeowners are precluded from collecting under the policy because the assignment
of the Developers' claims to the Homeowners was invalid, and in any event, the underlying
Thompson judgment is not binding without an adversarial trial. We agree with the latter
proposition.

 The trial court specifically concluded that the Thompson judgment was not binding
on Maryland. The trial court's conclusions of law are always reviewable. See Middleton v.
Kawasaki Steel Corp., 687 S.W.2d 42, 44 (Tex. App.--Houston [14th Dist.]), writ ref'd n.r.e.,
699 S.W.2d 199 (Tex. 1985)). Conclusions of law may not be reversed unless they are erroneous
as a matter of law. See Mercer v. Bludworth, 715 S.W.2d 693, 697 (Tex. App.--Houston [1st
Dist.] 1986, writ ref'd n.r.e.).

 The basis upon which the trial court concluded the underlying judgment was not
binding is found in State Farm Fire & Casualty Co. v. Gandy, 925 S.W.2d 696 (Tex. 1996). 
Appellants first complain that Gandy should not be applied here because the supreme court
specifically limited its retroactive application to those cases in which the assignment had been
complained of prior to the Gandy decision. Appellants contend this language indicates the
complaint had to have been preserved at the time Gandy was handed down on July 12, 1996 and
that Maryland had not complained of the assignment by that date. The record indicates otherwise. 
On June 21, 1996, in its First Amended Original Answer and Original Counterclaim, Maryland
protested the settlement between the Homeowners and the Developers in which the Developers
assigned their claims to the Homeowners for certain consideration. "Maryland was not a party
to such settlement, did not participate in such settlement, and did not agree to and does not
acquiesce in such settlement." Because Maryland had preserved its complaint of the assignment,
we will apply Gandy in this case.

 The issue we now examine is whether the final judgment from the Thompson suit
is binding upon Maryland. As previously stated, the trial court looked to Gandy and determined
that Maryland was not bound by the underlying judgment. In Gandy, defendant Pearce was sued
by his stepdaughter (Gandy) for negligent and intentional sexual abuse. See Gandy, 925 S.W.2d
at 697. State Farm had insured Pearce's home and business around the time the abuse had
occurred. State Farm conducted a preliminary investigation and determined that State Farm did
not have a policy on the Pearce home and business during the time some of the alleged abuse took
place. State Farm then sent a letter to Pearce indicating that it was willing to defend him subject
to a reservation of rights. Neither Pearce nor his attorney objected or responded to the letter. 
After meetings between State Farm, Pearce, and his attorney, State Farm sent a confirmation letter
of its decision to defend Pearce subject to reserving certain coverage issues. At some point,
Pearce engaged a new attorney who never contacted State Farm. At the time of trial, Gandy and
Pearce entered into an agreement whereby Pearce assigned to Gandy all his claims and causes of
action against State Farm in exchange for an agreed judgment against Pearce; Gandy agreed not
to execute the judgment against Pearce. After the agreement was signed but before State Farm
was notified, the trial court entered the agreed judgment against Pearce and awarded over six
million dollars in actual and exemplary damages to Gandy. See id. at 697-703.

 Shortly thereafter, Gandy sued State Farm alleging that the insurance company
owed her over six million dollars pursuant to the underlying judgment. She sued on the policy and
also asserted Pearce's assigned claims of failure to defend and settle and negligent representation. 
The appellate court affirmed the trial court's judgment that State Farm was negligent in handling
Pearce's defense, and affirmed the damage award to Gandy. See State Farm Fire & Casualty Co.
v. Gandy, 880 S.W.2d 129 (Tex. App--Texarkana 1994), rev'd, 925 S.W.2d 696 (Tex. 1996). 
Although skeptical of the collusive agreement between Gandy and Pearce, the intermediate
appellate court concluded that the amount of the underlying judgment was some evidence of
damage and thus supported the award of damages in the suit against State Farm. See id. at 138.

 On appeal, the supreme court reversed and held that Pearce's assignment to Gandy
was invalid on the basis of a three-part test. See Gandy, 925 S.W.2d at 714. The court then
stated that regardless of whether an assignment is valid, "[i]n no event, however, is a judgment
for plaintiff, rendered without a fully adversarial trial, binding on defendant's insurer or
admissible as evidence of damages in an action against defendant's insurer by plaintiff as
defendant's assignee." Id. (emphasis added). The court quoted the intermediate court in
emphasizing that a judgment obtained without an adversarial trial is characterized by fraud: 


Allowing an assignee of the named judgment debtor in such a case to collect all or
part of the judgment amount perpetrates a fraud on the court, because it bases
recovery on an untruth, i.e., that the judgment debtor may have to pay the
judgment. Such a result should be against public policy, because it allows, as here,
parties to take a sham judgment by agreement, without any trial or evidence
concerning the merits, and then collect all or part of that judgment from a third
party. Allowing recovery in such a case encourages fraud and collusion and
corrupts the judicial process by basing the recovery on a fiction.



Id. at 705 (quoting Gandy, 880 S.W.2d at 138) (citations omitted). The court went on to compare
Pearce's collusive assignment to Gandy and her agreement not to execute with Mary Carter
agreements, (9) which are disfavored in Texas and void as against public policy. See id. at 709-10. 
We are struck by the similarities of the circumstances surrounding a Mary Carter agreement, the
circumstances in Gandy, and the circumstances in the present case.

 Appellants attempt to dismiss as dicta the supreme court's holding that a judgment
rendered without a fully adversarial trial is not binding on the defendant's insurer. To the
contrary, the court reiterated its command that an agreed judgment between a plaintiff and a
defendant is not binding on the insurer because an insurer's liability to a plaintiff who is the
insured's assignee should be determined by "the strength of plaintiff's claims rather than the
generosity of defendant's concessions." Id. at 719. The supreme court recently reaffirmed this
policy in Trinity Universal Insurance Co. v. Cowan, 945 S.W.2d 819, 821 (Tex. 1997) (noting
challenge to amount of damages was controlled by Gandy's holding that underlying judgment is
neither binding nor admissible as evidence of damages).

 We find the circumstances in Gandy sufficiently similar to make the supreme
court's reasoning applicable to the case at bar. Here, the Homeowners and the Developers agreed
that "the entry of [j]udgment in the [Thompson suit] against the Defendants [Developers] is a
condition precedent to the Plaintiffs [Homeowners] granting of this Covenant Not to Execute." 
The Developers then assigned all their claims against Maryland to the Homeowners and promised
to help them collect. Part of what provoked the supreme court to invalidate the assignment in
Gandy was this distortion in legal positions: a defendant once adverse to a plaintiff's claims later
contradicts his original defense for the purpose of promoting the plaintiff's recovery. The Gandy
court compared this sham to the assignment of legal malpractice claims:


For the law to countenance this abrupt and shameless shift of positions would give
prominence (and substance) to the image that lawyers will take any position,
depending upon where the money lies, and that litigation is a mere game and not
a search for truth. It is one thing for lawyers in our adversary system to represent
clients with whom they personally disagree; it is something quite different for
lawyers (and clients) to switch positions concerning the same incident simply
because an assignment and the law of proximate cause have given them a financial
interest in switching.



Gandy, 925 S.W.2d at 708 (citations omitted) (quoting Zuniga v. Groce, Locke & Hebdon, 878
S.W.2d 313, 318 (Tex. App.--San Antonio 1994, writ ref'd)).

 The Covenant at issue here has the same detrimental impact on the legal system as
the agreement in Gandy. As with a Mary Carter agreement, this Covenant and its resulting
judgment present a "sham of adversity" to the jury and distort the trial process against nonsettling
defendants: "[W]e do not favor settlement arrangements that skew the trial process, mislead the
jury, promote unethical collusion among nominal adversaries, and create the likelihood that a less
culpable defendant will be hit with the full judgment." Gandy, 925 S.W.2d at 710 (citing Elbaor
v. Smith, 845 S.W.2d 240, 250 (Tex. 1992) (holding Mary Carter agreements void as against
public policy)). Although the amount of damages was not agreed upon as in Gandy, the goal of
the Covenant was to conclude the underlying suit with an collusive adjudication of liability against
the insured. The parties, however, had no intention of ending the litigation; the primary purpose
of the Covenant was to further litigation against the insurance company. See Gandy, 925 S.W.2d
at 711-12 (entire purpose of arrangement between insured and third party was to devise way to
recover against insurance company). In Gandy, the supreme court disapproved such a partial
settlement in large measure because it prolonged rather than ended litigation. See id.

 After agreeing that the Developers would be liable but that the Homeowners would
never collect from them, both parties now expect Maryland to pay the price of their Covenant. 
This is the same kind of sham judgment, rendered without a fully adversarial trial, that the Gandy
court declared is not binding on the defendant's insurer and is not admissible as evidence of
damages in an action brought against the insurer by the plaintiff's assignee. See id. at 714. While
appellants attempt to distinguish Gandy on the ground that it "discusses the binding effect of the
judgment on damages, not liability," we do not find this distinction meaningful in light of the
policy concerns discussed at length by the supreme court in Gandy. We therefore follow the
supreme court and hold that the underlying judgment agreed to between the Homeowners and the
Developers is not binding on Maryland.

 Appellants also argue in their first issue that regardless of the holding in Gandy,
Maryland breached its duty to defend under the policy. They cite section 58 of the Restatement
of Judgments for the rule that when an insurer has an obligation to defend its insured and is given
reasonable notice and an opportunity to defend the suit, the insurer is estopped from disputing
evidence of the insured's liability to the injured party. See Restatement (Second) of Judgments
§ 58. However, we disagree with appellants' assertion that Maryland breached its duty to defend
the Developers. An offer to defend subject to a reservation of rights does not constitute a refusal
to defend. See State Farm Lloyds Ins. Co. v. Maldonado, 963 S.W.2d 38, 40 (Tex. 1997). (10) 
Furthermore, appellant's position is irreconcilable with the supreme court's recent pronouncement
in Gandy that a judgment for the plaintiff rendered without a fully adversarial trial is not binding
on defendant's insurer. (11) See Gandy, 925 S.W.2d at 714. We conclude that the arguments raised
in appellants' first issue lack merit. (12)


Applicability of the "Continuing Tort" Doctrine

 In their second issue, appellants claim that the trial court erred in refusing to apply
the "continuing tort" doctrine to the limitations issue. In their third issue, they challenge the
sufficiency of the evidence to support the trial court's conclusion that the Homeowners' claims
against the Developers arising from the 1973 flood were barred by the statute of limitations. In
their fourth issue, appellants argue that the trial court erred in refusing to address the remaining
issues in the case after resolving the limitations issue in Maryland's favor. Because appellants rely
on the "continuing tort" theory for all three arguments, we will address these issues together.

 The applicable statute of limitations on a suit for damage to real property is two
years. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 1998). For a suit to be
timely under a two-year statute of limitations, it must be brought within two years from the date
on which the cause of action accrues. See id. Generally, a cause of action accrues when a
wrongful act causes some legal injury. See Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826,
828 (Tex. 1990). However, an exception to this rule exists for continuing torts. See Adler v.
Beverly Hills Hosp., 594 S.W.2d 153, 154 (Tex. Civ. App.--Dallas 1980, no writ). A continuing
tort involves wrongful conduct inflicted over a period of time that is repeated until desisted, and
each day creates a separate cause of action. See Two Pesos, Inc. v. Gulf Ins. Co., 901 S.W.2d
495, 500 (Tex. App.--Houston [14th Dist.] 1995, no writ) (citing Arquette v. Hancock, 656
S.W.2d 627, 629 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.)). A cause of action for a
continuing tort does not accrue until the defendant's tortious act ceases. See Tectonic Realty Inv.
Co. v. CNA Lloyd's of Texas Ins. Co., 812 S.W.2d 647, 654 (Tex. App.--Dallas 1991, writ
denied).

 In this case, the tortious acts alleged were the Developers' negligence in
engineering, planning and constructing the subdivision and their failure to disclose the alleged
property defects to the Homeowners. These alleged acts had necessarily taken place by the time
the Homeowners moved into their homes, and more than fourteen years before they filed suit
against the Developers. As the trial court concluded in its findings of fact, the Homeowners'
claims asserted in the Thompson suit and in this lawsuit accrued at the time damage resulted from
the 1973 flood. The fact that damages may accumulate after a tort is committed does not toll
limitations. See Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 828 (Tex. 1990); Tectonic
Realty, 812 S.W.2d at 654. Appellants' attempt to use the "continuing tort" doctrine to evade the
statute of limitations fails because the last tortious act alleged occurred more than two years before
suit was filed. See Bhali v. Methodist Hospital, 896 S.W.2d 207, 209 (Tex. App.--Houston [1st
Dist.] 1995, writ denied).

 Appellants next contend that Maryland cannot assert the limitations defense because
it is personal to the Developers and the Developers did not raise it in the Thompson suit. 
Appellants rely on a number of uninsured motorist and secured transaction cases in support of this
proposition. However, none of the cases cited by appellants supports their position.

 First, appellants cite Franco v. Allstate Insurance Co., 505 S.W.2d 789 (Tex. 1974)
and United Services Automobile Ass'n v. Blakemore, 782 S.W.2d 277 (Tex. App.--Waco 1989,
writ denied) for the proposition that an insurer cannot assert a tortfeasor's statute of limitations
defense. Franco involved a suit by insureds against their insurer for personal injuries and
wrongful death caused by an uninsured motorist; the issue was which statute of limitations applied
to the suit, the four-year period for contracts or the two-year period for torts. See Franco, 505
S.W.2d at 790. The supreme court recognized that the insurer, in defending its liability under the
insurance contract, does not succeed to the right of the uninsured motorist to interpose the
procedural defense of limitations which would be available to the motorist in a tort action. See
id. at 792. In other words, the insurer cannot assert the limitations period for torts when the suit
against it sounds in contract. This reasoning does not support appellant's position in this case.

 Blakemore was also a suit brought by an insured seeking contractual and tort
damages from his automobile insurer's denial of uninsured motorist benefits following a collision
with an uninsured driver. See Blakemore, 782 S.W.2d at 277-78. As in Franco, the insurance
policy involved stated that the insured would pay damages that a covered person is "legally
entitled to recover" from the operator of an uninsured vehicle. See id. at 278. Following Franco,
the Blakemore court held that the term "legally entitled to recover" simply means that the insured
must be able to show fault on the part of the uninsured motorist, and does not allow the insurer
to impose a limitations defense that would have been available to the tortfeasor. See id. at 279
(citing Franco, 505 S.W.2d at 792).

 Appellants argue that the same "legally entitled to recover" language appears in the
policies at issue in this case, thus making the limitations rule in uninsured motorist cases
applicable. We disagree. Franco and Blakemore are distinguishable from the instant case because
uninsured motorist coverage arises from a first-party contractual relationship; unlike liability or
indemnity coverage, it is not derived from a successful claim by a third party. Maryland did not
attempt to invoke a limitations defense that would have been available to a third-party tortfeasor. 
Instead, it merely sought to assert the limitations defense available to its own insured. In addition,
the contrived nature of the underlying lawsuit in this case distinguishes it from the uninsured
motorist cases.

 The secured transaction cases appellants cite also fail to support their position. For
instance, appellants cite Miller, Hiersche, Martens & Hayward, P.C. v. Bent Tree National Bank,
894 S.W.2d 828 (Tex. App.--Dallas 1995, no writ) for the rule that a secured party may foreclose
on collateral even though the underlying suit based on the debt would be barred by the statute of
limitations. However, appellants' reliance on Miller ignores the principles of the creditor-debtor
relationship. If the debtor fails to satisfy the debt, the secured party keeps the collateral as full
or partial satisfaction of the debt. The secured party expects to be able to retain the collateral if
the debt is not satisfied; likewise, the debtor does not expect to keep the collateral in that
circumstance. Allowing a debtor to assert a limitations defense to recover the collateral would
eliminate the value of the security. No such relationship existed between the parties in this case.
Thus, the nature of the creditor-debtor relationship makes secured transaction cases inapplicable
to the present situation.

 The trial court did not err in refusing to apply the "continuing tort" theory to the
claims against Maryland arising from the 1973 flood; therefore, it also did not err in refusing to
address the remaining issues in this case. Since appellants' factual and legal sufficiency challenges
to the evidence on the limitations issue are entirely dependent on their "continuing tort" theory,
we reject the arguments raised in their third issue as well. (13) Finally, the cases appellants cite do
not support their theory that the limitations defense is personal to the Developers and therefore
cannot be asserted by Maryland. The points of error raised in the second, third, and fourth issues
are overruled.

 In their brief, appellees raise two alternative independent grounds for affirming the
trial-court judgment. First, appellees argue that the Homeowners did not establish coverage under
the Maryland policies. Second, they assert that almost all of the Homeowners failed to prove
damages under the Maryland policies. Appellees correctly note that because their arguments do
not ask for greater relief than that granted by the trial court, they were not required to file a notice
of appeal as a prerequisite to presenting these arguments. See Tex. R. App. P. 25.1(c). However,
because we have ruled against appellants on all four of the issues they raised, we need not address
appellees' alternative arguments in support of the trial-court judgment.


CONCLUSION

 Following Gandy, we hold that an agreed judgment as to liability between a third
party and an insured is not binding on the insurer. The trial court correctly held that the judgment
in the underlying Thompson suit is not binding on the parties and that the statute of limitations bars
any relitigation of the Homeowner's suit against the Developers. We therefore affirm the trial-court judgment.



 

 Bea Ann Smith, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: November 30, 1998

Publish
1. The Developers are First General Realty Corporation, First Mortgage Company of Texas,
Inc., First General Realty Corporation and Pacific Gulf Investment Corporation d/b/a River
Plantation Development Company, Inc., First General Realty Corporation d/b/a River Plantation
Development Company, Inc., and River Plantation Development Company, Inc.
2. The Homeowners include several hundred individuals, who are listed in Appendix A
attached to this Court's judgment.
3. The insurance companies are Maryland Casualty Company, National Standard Insurance
Company, and American General Fire and Casualty Company.
4. The underlying suit is styled Thompson, et al. v. Walter M. Mischer Co., et al., No. 39,998
filed in the district court of Montgomery County.
5. The primary policy was effective June 6, 1973 to June 6, 1974. The excess policy was
effective September 1, 1972 to September 1, 1974.
6. Furthermore, sometime in 1977, the River Plantation Municipal Utility District sued the
Developers for flooding in violation of certain statutes. The suit settled in 1979 when the
Developers agreed to help finance drainage improvements at the River Plantation Development. 
Maryland was not given notice of these claims nor asked to defend them.
7. The original petition, First, Second, and Third Amended Original Petitions alleged only
damages against Developers caused by a flood in 1983. Developers had liability insurance
coverage for damages incurred in the 1983 flood through insurance companies other than
Maryland. There is no stipulation concerning occurrences in 1974, 1975, and 1976. Appellants,
however, maintain in the instant suit that Maryland is obligated to provide coverage for those
years in which it had a policy.
8. Maryland alleges that it paid its pro rata share of the defense. Although the parties do not
include this in their stipulation, appellants do not contest this issue.
9. A Mary Carter agreement is any settlement arrangement between the plaintiff and some of
the defendants in a case by which the settling defendants agree to pay the plaintiff a certain amount
of money and to participate in the trial against the nonsettling defendants, and the plaintiff agrees
to release the settling defendants from liability; if the judgment against the nonsettling defendant
is large enough, the settlement amount is repaid out of the judgment. See Gandy, 925 S.W.2d at
709.
10. We find that Maldonado impliedly overrules the holding in Ranger Insurance Co. v.
Robertson, 707 S.W.2d 135 (Tex. App.--Austin 1986, writ ref'd n.r.e.) that forced the insurance
company to choose between offering an unconditional defense, which waives or estops all policy
defenses including noncoverage, see Farmers Texas County Mutual Insurance Co. v. Wilkinson,
601 S.W.2d 520, 521 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.), and offering a conditional
defense which also essentially waives its right to claim noncoverage, see Robertson, 707 S.W.2d
at 144. The El Paso Court of Appeals understood this conundrum and held that an insurer may
tender a conditional defense when the insurer has a good faith belief that the complaint alleges
conduct which may not be covered by the policy. See American Eagle Ins. Co. v. Nettleton, 932
S.W.2d 169, 174 (Tex. App.--El Paso 1996, writ denied) (insurer did not breach duty to defend
by refusing to tender an unconditional defense). In light of Maldonado, we hold that American
Eagle rather than Robertson reflects present Texas law.
11. In Gandy, State Farm offered to defend Pearce but reserved its right not to provide coverage
for events that occurred when there was no policy in effect. See Gandy, 925 S.W.2d at 700-01. 
Similarly, Maryland reserved its right not to provide coverage for claims involving the 1979 and
1983 floods, for which both parties agree no Maryland policy was in effect.
12. In support of the trial court's result, Maryland suggests that the trial court erred in not
holding invalid the assignment of the Developers' claims to the Homeowners because the three-part Gandy test was satisfied. See id. at 714 (assignment is invalid if (1) made prior to
adjudication of plaintiff's claim in fully adversarial trial; (2) insurer has tendered defense; and (3)
defendant's insurer has either accepted coverage or made a good faith effort to adjudicate coverage
issue prior to adjudication of plaintiff's claim). Our disposition of this issue in Maryland's favor
prevents our needing to reach this argument.
13. To the extent that appellants bring any challenge to the sufficiency of the evidence that is
independent of their "continuing tort" theory, they have not made any arguments or cited any
cases to support it. Appellants have thus failed to properly brief any such challenge, and we will
not address it. See Tex. R. App. P. 38.1(h).



uals, who are listed in Appendix A
attached to this Court's judgment.
3. The insurance companies are Maryland Casualty Company, National Standard Insurance
Company, and American General Fire and Casualty Company.
4. The underlying suit is styled Thompson, et al. v. Walter M. Mischer Co., et al., No. 39,998
filed in the district court of Montgomery County.
5. The primary policy was effective June 6, 1973 to June 6, 1974. The excess policy was
e