FIRST GENERAL REALTY
CORPORATION, et al.,
Appellants,

v.

MARYLAND CASUALTY COMPANY,
et al., Appellees.

No. 03–97–00580–CV.

Court of Appeals of Texas,
Austin.

Nov. 30, 1998.

Ronald D. Wren, Bedford, for Appellants.

Barry Bishop, Clark, Thomas & Winters, Austin, for Appellees.

Before Justices POWERS, KIDD and B.A. SMITH.

BEA ANN SMITH, Justice.

We withdraw our original opinion and judgment issued August 13, 1998, and substitute this one in its place. The main issue presented in this appeal is whether an agreed judgment as to liability between a third party and an insured is binding on the insurer. Appellants First General Realty Corporation, *et al.* sued appellees Maryland Casualty Company, *et al.* for damages under several theories and requested declaratory judgment that appellees were obligated to provide insurance coverage. After a bench trial, the trial court rendered a take-nothing judgment in favor of appellees. Appellants filed a motion for new trial which the trial

court denied; they now appeal that order. We will affirm the trial-court judgment.

## BACKGROUND

The appellants in this cause consist of the plaintiffs (the "Developers")[1] and the intervenors (the "Homeowners").[2] The appellees are the defendant insurance companies[3] which we refer to collectively as "Maryland."

### The Stipulated Facts

Both appellants and appellees stipulate to the following facts:

The Developers were involved in the development of the River Plantation subdivision in Montgomery County, Texas. The Homeowners are various individuals who purchased property in River Plantation prior to 1985. A series of floods affected the River Plantation subdivision, particularly in 1973, 1976, 1979, and 1983. The floods caused physical damage to the property and structures, and a substantial number of Homeowners suffered a loss of the use and enjoyment of their land or diminution in property value.

The Homeowners brought suit against the Developers in 1985 (the *"Thompson"* suit),[4] alleging that various wrongful acts, including negligence, caused them to suffer damages in 1983. In a subsequent petition, they alleged that prior to and during 1973, the Developers were negligent in failing to disclose to prospective purchasers that certain sections of the subdivision had a propensity to flood. The Fireman's Fund Insurance Company, which had issued an occurrence-type commercial comprehensive general liability policy insuring some of the Developers, assumed the primary defense of the *Thompson* suit.

Maryland had written policies of primary and excess insurance for the Developers for

---

1. The Developers are First General Realty Corporation, First Mortgage Company of Texas, Inc., First General Realty Corporation and Pacific Gulf Investment Corporation d/b/a River Plantation Development Company, Inc., First General Realty Corporation d/b/a River Plantation Development Company, Inc., and River Plantation Development Company, Inc.

2. The Homeowners include several hundred individuals, who are listed in Appendix A attached to this Court's judgment.

3. The insurance companies are Maryland Casualty Company, National Standard Insurance Company, and American General Fire and Casualty Company.

4. The underlying suit is styled *Thompson, et al. v. Walter M. Mischer Co., et al.*, No. 39,998 filed in the district court of Montgomery County.

the policy periods in 1973, 1974, 1975, and 1976. Maryland acknowledges that the 1973 flood was an "occurrence" as defined in its primary policy and excess policy in existence at that time and that coverage for the 1973 flood would be provided under both policies.[5]

The parties agree that the Developers had notice of claims by Homeowners arising by reason of the 1973 flood during the 1973–74 time frame.[6] However, Maryland did not receive notice of any claims under its 1973 general liability policy until July 1987. An attorney for the Developers sent a letter notifying Maryland of the Homeowners' claims against the Developers in the *Thompson* suit and enclosed a copy of the Fourth Amended Petition which was the first pleading to assert any occurrence in 1973 or claim involving the 1973 flood.[7] Maryland participated in some joint defense meetings and settlement discussions with the Developers and the Homeowners between 1987 and 1990. Maryland undertook limited investigation of the claims; ultimately, Maryland did not provide the Developers with a defense to the *Thompson* suit and made no payment toward settlement of the Homeowner's claims.[8] No Maryland policy provided coverage for the 1979 and 1983 claims asserted.

In December 1990, the Homeowners and the Developers entered into a "Covenant Not to Execute, Indemnification Agreement, and Assignment of Claims" agreement (the "Covenant"). Pursuant to the Covenant, the Homeowners essentially agreed to release the Developers from liability except for the period from June 1972 to May 1981, and the Developers assigned to the Homeowners all their claims and causes of action against their insurers, specifically their claims against Maryland. The Homeowners received $4,725,000 and agreed not to execute any judgment against the Developers with the understanding that the judgment would be enforceable only against Maryland. Maryland was not a party to the Covenant. The Homeowners who received the funds included individuals who owned improved property at the time of the 1973 flood, individuals who owned unimproved property at the time of the 1973 flood, and individuals who did not own any property at River Plantation at that time. In May 1991, the Montgomery County district court in the *Thompson* suit rendered judgment for the Homeowners in the amount of $9,011,894 as actual damages, which included physical damage and diminution in value from floods occurring from 1973 to 1983.

### The Instant Suit

In October 1987, the Developers brought a declaratory-judgment action against Maryland requesting a determination that coverage under Maryland's policies existed and that Maryland was obligated to provide a defense in the *Thompson* suit. The Homeowners intervened in 1991. After the Covenant was executed and judgment in the *Thompson* suit was rendered, appellants amended their pleadings to seek coverage from Maryland for some portion of the nine-million dollar *Thompson* judgment. Appellants also alleged that Maryland had failed to provide a defense, negligently failed to accept settlement, negligently provided a defense in violation of the DTPA, and violated the Texas Insurance Code in handling the defense. Maryland then counterclaimed by requesting a declaratory judgment as to its obligations, duties, and rights under the insurance poli-

5.  The primary policy was effective June 6, 1973 to June 6, 1974. The excess policy was effective September 1, 1972 to September 1, 1974.

6.  Furthermore, sometime in 1977, the River Plantation Municipal Utility District sued the Developers for flooding in violation of certain statutes. The suit settled in 1979 when the Developers agreed to help finance drainage improvements at the River Plantation Development. Maryland was not given notice of these claims nor asked to defend them.

7.  The original petition, First, Second, and Third Amended Original Petitions alleged only dam-

ages against Developers caused by a flood in 1983. Developers had liability insurance coverage for damages incurred in the 1983 flood through insurance companies other than Maryland. There is no stipulation concerning occurrences in 1974, 1975, and 1976. Appellants, however, maintain in the instant suit that Maryland is obligated to provide coverage for those years in which it had a policy.

8.  Maryland alleges that it paid its pro rata share of the defense. Although the parties do not include this in their stipulation, appellants do not contest this issue.

cies as well as its liabilities, if any, for the *Thompson* judgment.

Following a bench trial in 1997, the trial court made several findings of fact and conclusions of law including: (1) Maryland did not meet the test set out in *State Farm Fire & Casualty Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996), to invalidate the assignment between the Developers and the Homeowners; (2) the judgment and findings in the *Thompson* suit were not binding; and (3) the Homeowners' claims asserted in the *Thompson* suit and in this cause were not based on a continuing tort and were therefore barred by the statute of limitations. The court expressly declined to reach the remaining issues in the case. The trial court entered a take-nothing judgment in favor of Maryland and denied appellants' motion for new trial.

## DISCUSSION

### *Relitigation of Liability*

■ Appellants raise several complaints in their first issue, particularly that the trial court erred by allowing the Developers' liability in the underlying suit to be relitigated. The essence of this complaint is that the trial court erred in concluding that the final judgment in the *Thompson* suit was not binding. Appellants apparently wish to obtain insurance coverage for the damage caused by the flooding from 1973–1983 by holding Maryland to the final judgment in *Thompson* that Maryland's insured was liable in an amount over nine million dollars. Maryland argues that the Homeowners are precluded from collecting under the policy because the assignment of the Developers' claims to the Homeowners was invalid, and in any event, the underlying *Thompson* judgment is not binding without an adversarial trial. We agree with the latter proposition.

■ The trial court specifically concluded that the *Thompson* judgment was not binding on Maryland. The trial court's conclusions of law are always reviewable. *See Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] ), *writ ref'd n.r.e.*, 699 S.W.2d 199 (Tex. 1985). Conclusions of law may not be reversed unless they are erroneous as a matter of law. *See Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

The basis upon which the trial court concluded the underlying judgment was not binding is found in *State Farm Fire & Casualty Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996). Appellants first complain that *Gandy* should not be applied here because the supreme court specifically limited its retroactive application to those cases in which the assignment had been complained of prior to the *Gandy* decision. Appellants contend this language indicates the complaint had to have been preserved at the time *Gandy* was handed down on July 12, 1996 and that Maryland had not complained of the assignment by that date. The record indicates otherwise. On June 21, 1996, in its First Amended Original Answer and Original Counterclaim, Maryland protested the settlement between the Homeowners and the Developers in which the Developers assigned their claims to the Homeowners for certain consideration. "Maryland was not a party to such settlement, did not participate in such settlement, and did not agree to and does not acquiesce in such settlement." Because Maryland had preserved its complaint of the assignment, we will apply *Gandy* in this case.

The issue we now examine is whether the final judgment from the *Thompson* suit is binding upon Maryland. As previously stated, the trial court looked to *Gandy* and determined that Maryland was not bound by the underlying judgment. In *Gandy*, defendant Pearce was sued by his stepdaughter (Gandy) for negligent and intentional sexual abuse. *See Gandy*, 925 S.W.2d at 697. State Farm had insured Pearce's home and business around the time the abuse had occurred. State Farm conducted a preliminary investigation and determined that State Farm did not have a policy on the Pearce home and business during the time some of the alleged abuse took place. State Farm then sent a letter to Pearce indicating that it was willing to defend him subject to a reservation of rights. Neither Pearce nor his attorney objected or responded to the letter. After meetings between State Farm, Pearce, and his attorney, State Farm sent a confirmation

letter of its decision to defend Pearce subject to reserving certain coverage issues. At some point, Pearce engaged a new attorney who never contacted State Farm. At the time of trial, Gandy and Pearce entered into an agreement whereby Pearce assigned to Gandy all his claims and causes of action against State Farm in exchange for an agreed judgment against Pearce; Gandy agreed not to execute the judgment against Pearce. After the agreement was signed but before State Farm was notified, the trial court entered the agreed judgment against Pearce and awarded over six million dollars in actual and exemplary damages to Gandy. *See id.* at 697–703.

Shortly thereafter, Gandy sued State Farm alleging that the insurance company owed her over six million dollars pursuant to the underlying judgment. She sued on the policy and also asserted Pearce's assigned claims of failure to defend and settle and negligent representation. The appellate court affirmed the trial court's judgment that State Farm was negligent in handling Pearce's defense, and affirmed the damage award to Gandy. *See State Farm Fire & Casualty Co. v. Gandy,* 880 S.W.2d 129 (Tex. App.—Texarkana 1994), *rev'd,* 925 S.W.2d 696 (Tex.1996). Although skeptical of the collusive agreement between Gandy and Pearce, the intermediate appellate court concluded that the amount of the underlying judgment was some evidence of damage and thus supported the award of damages in the suit against State Farm. *See id.* at 138.

■ On appeal, the supreme court reversed and held that Pearce's assignment to Gandy was invalid on the basis of a three-part test. *See Gandy,* 925 S.W.2d at 714. The court then stated that regardless of whether an assignment is valid, "[i]n no event, however, is a judgment for plaintiff, *rendered without a fully adversarial trial,* binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defen-

dant's assignee." *Id.* (emphasis added). The court quoted the intermediate court in emphasizing that a judgment obtained without an adversarial trial is characterized by fraud:

> Allowing an assignee of the named judgment debtor in such a case to collect all or part of the judgment amount perpetrates a fraud on the court, because it bases recovery on an untruth, i.e., that the judgment debtor may have to pay the judgment. Such a result should be against public policy, because it allows, as here, parties to take a sham judgment by agreement, without any trial or evidence concerning the merits, and then collect all or part of that judgment from a third party. Allowing recovery in such a case encourages fraud and collusion and corrupts the judicial process by basing the recovery on a fiction.

*Id.* at 705 (quoting *Gandy,* 880 S.W.2d at 138) (citations omitted). The court went on to compare Pearce's collusive assignment to Gandy and her agreement not to execute with Mary Carter agreements,[9] which are disfavored in Texas and void as against public policy. *See id.* at 709–10. We are struck by the similarities of the circumstances surrounding a Mary Carter agreement, the circumstances in *Gandy,* and the circumstances in the present case.

Appellants attempt to dismiss as dicta the supreme court's holding that a judgment rendered without a fully adversarial trial is not binding on the defendant's insurer. To the contrary, the court reiterated its command that an agreed judgment between a plaintiff and a defendant is not binding on the insurer because an insurer's liability to a plaintiff who is the insured's assignee should be determined by "the strength of plaintiff's claims rather than the generosity of defendant's concessions." *Id.* at 719. The supreme court recently reaffirmed this policy in *Trinity Universal Insurance Co. v. Cowan,* 945 S.W.2d 819, 821 (Tex.1997) (noting challenge to amount of damages was con-

**9.** A Mary Carter agreement is any settlement arrangement between the plaintiff and some of the defendants in a case by which the settling defendants agree to pay the plaintiff a certain amount of money and to participate in the trial against the nonsettling defendants, and the plain-

tiff agrees to release the settling defendants from liability; if the judgment against the nonsettling defendant is large enough, the settlement amount is repaid out of the judgment. *See Gandy,* 925 S.W.2d at 709.

trolled by *Gandy*'s holding that underlying judgment is neither binding nor admissible as evidence of damages).

We find the circumstances in *Gandy* sufficiently similar to make the supreme court's reasoning applicable to the case at bar. Here, the Homeowners and the Developers agreed that "the entry of [j]udgment in the [*Thompson* suit] against the Defendants [Developers] is a condition precedent to the Plaintiffs [Homeowners] granting of this Covenant Not to Execute." The Developers then assigned all their claims against Maryland to the Homeowners and promised to help them collect. Part of what provoked the supreme court to invalidate the assignment in *Gandy* was this distortion in legal positions: a defendant once adverse to a plaintiff's claims later contradicts his original defense for the purpose of promoting the plaintiff's recovery. The *Gandy* court compared this sham to the assignment of legal malpractice claims:

> For the law to countenance this abrupt and shameless shift of positions would give prominence (and substance) to the image that lawyers will take any position, depending upon where the money lies, and that litigation is a mere game and not a search for truth. It is one thing for lawyers in our adversary system to represent clients with whom they personally disagree; it is something quite different for lawyers (and clients) to switch positions concerning the same incident simply because an assignment and the law of proximate cause have given them a financial interest in switching.

*Gandy*, 925 S.W.2d at 708 (citations omitted) (quoting *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex.App.—San Antonio 1994, writ ref'd)).

The Covenant at issue here has the same detrimental impact on the legal system as the agreement in *Gandy*. As with a Mary Carter agreement, this Covenant and its resulting judgment present a "sham of adversity" to the jury and distort the trial process against nonsettling defendants: "[W]e do not favor settlement arrangements that skew the trial process, mislead the jury, promote unethical collusion among nominal adversaries,

and create the likelihood that a less culpable defendant will be hit with the full judgment." *Gandy*, 925 S.W.2d at 710 (citing *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex.1992) (holding Mary Carter agreements void as against public policy)). Although the amount of damages was not agreed upon as in *Gandy*, the goal of the Covenant was to conclude the underlying suit with an collusive adjudication of liability against the insured. The parties, however, had no intention of ending the litigation; the primary purpose of the Covenant was to further litigation against the insurance company. *See Gandy*, 925 S.W.2d at 711–12 (entire purpose of arrangement between insured and third party was to devise way to recover against insurance company). In *Gandy*, the supreme court disapproved such a partial settlement in large measure because it prolonged rather than ended litigation. *See id.*

After agreeing that the Developers would be liable but that the Homeowners would never collect from them, both parties now expect Maryland to pay the price of their Covenant. This is the same kind of sham judgment, rendered without a fully adversarial trial, that the *Gandy* court declared is not binding on the defendant's insurer and is not admissible ·as evidence of damages in an action brought against the insurer by the plaintiff's assignee. *See id.* at 714. While appellants attempt to distinguish *Gandy* on the ground that it "discusses the binding effect of the judgment on damages, not liability," we do not find this distinction meaningful in light of the policy concerns discussed at length by the supreme court in *Gandy*. We therefore follow the supreme court and hold that the underlying judgment agreed to between the Homeowners and the Developers is not binding on Maryland.

■ Appellants also argue in their first issue that regardless of the holding in *Gandy*, Maryland breached its duty to defend under the policy. They cite section 58 of the Restatement of Judgments for the rule that when an insurer has an obligation to defend its insured and is given reasonable notice and an opportunity to defend the suit, the insurer is estopped from disputing evidence of the insured's liability to the injured party. *See*

Restatement (Second) of Judgments § 58. However, we disagree with appellants' assertion that Maryland breached its duty to defend the Developers. An offer to defend subject to a reservation of rights does not constitute a refusal to defend. *See State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 40 (Tex.1998).[10] Furthermore, appellant's position is irreconcilable with the supreme court's recent pronouncement in *Gandy* that a judgment for the plaintiff rendered without a fully adversarial trial is not binding on defendant's insurer.[11] *See Gandy*, 925 S.W.2d at 714. We conclude that the arguments raised in appellants' first issue lack merit.[12]

### Applicability of the "Continuing Tort" Doctrine

In their second issue, appellants claim that the trial court erred in refusing to apply the "continuing tort" doctrine to the limitations issue. In their third issue, they challenge the sufficiency of the evidence to support the trial court's conclusion that the Homeowners' claims against the Developers arising from the 1973 flood were barred by the statute of limitations. In their fourth issue, appellants argue that the trial court erred in refusing to address the remaining issues in the case after resolving the limitations issue in Maryland's favor. Because appellants rely on the "continuing tort" theory for all three arguments, we will address these issues together.

▆▆▆ The applicable statute of limitations on a suit for damage to real property is two years. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (West Supp.1998). For a suit to be timely under a two-year statute of limitations, it must be brought within two years from the date on which the cause of action accrues. *See id.* Generally, a cause of action accrues when a wrongful act causes some legal injury. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). However, an exception to this rule exists for continuing torts. *See Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153, 154 (Tex.Civ.App.—Dallas 1980, no writ). A continuing tort involves wrongful conduct inflicted over a period of time that is repeated until desisted, and each day creates a separate cause of action. *See Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 500 (Tex.App.— Houston [14th Dist.] 1995, no writ) (citing *Arquette v. Hancock*, 656 S.W.2d 627, 629 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.)). A cause of action for a continuing tort does not accrue until the defendant's tortious act ceases. *See Tectonic Realty Inv. Co. v. CNA Lloyd's of Texas Ins. Co.*, 812 S.W.2d 647, 654 (Tex.App.—Dallas 1991, writ denied).

▆▆▆▆ In this case, the tortious acts alleged were the Developers' negligence in engineering, planning and constructing the

---

**10.** We find that *Maldonado* impliedly overrules the holding in *Ranger Insurance Co. v. Robertson*, 707 S.W.2d 135 (Tex.App.—Austin 1986, writ ref'd n.r.e.) that forced the insurance company to choose between offering an unconditional defense, which waives or estops all policy defenses including noncoverage, *see Farmers Texas County Mutual Insurance Co. v. Wilkinson*, 601 S.W.2d 520, 521 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.), and offering a conditional defense which also essentially waives its right to claim noncoverage, *see Robertson*, 707 S.W.2d at 144. The El Paso Court of Appeals understood this conundrum and held that an insurer may tender a conditional defense when the insurer has a good faith belief that the complaint alleges conduct which may not be covered by the policy. *See American Eagle Ins. Co. v. Nettleton*, 932 S.W.2d 169, 174 (Tex.App.—El Paso 1996, writ denied) (insurer did not breach duty to defend by refusing to tender an unconditional defense). In light of *Maldonado*, we hold that *American Eagle* rather than *Robertson* reflects present Texas law.

**11.** In *Gandy*, State Farm offered to defend Pearce but reserved its right not to provide coverage for events that occurred when there was no policy in effect. *See Gandy*, 925 S.W.2d at 700–01. Similarly, Maryland reserved its right not to provide coverage for claims involving the 1979 and 1983 floods, for which both parties agree no Maryland policy was in effect.

**12.** In support of the trial court's *result*, Maryland suggests that the trial court erred in not holding invalid the assignment of the Developers' claims to the Homeowners because the three-part *Gandy* test was satisfied. *See id.* at 714 (assignment is invalid if (1) made prior to adjudication of plaintiff's claim in fully adversarial trial; (2) insurer has tendered defense; and (3) defendant's insurer has either accepted coverage or made a good faith effort to adjudicate coverage issue prior to adjudication of plaintiff's claim). Our disposition of this issue in Maryland's favor prevents our needing to reach this argument.

subdivision and their failure to disclose the alleged property defects to the Homeowners. These alleged acts had necessarily taken place by the time the Homeowners moved into their homes, and more than fourteen years before they filed suit against the Developers. As the trial court concluded in its findings of fact, the Homeowners' claims asserted in the *Thompson* suit and in this lawsuit accrued at the time damage resulted from the 1973 flood. The fact that damages may accumulate after a tort is committed does not toll limitations. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990); *Tectonic Realty*, 812 S.W.2d at 654. Appellants' attempt to use the "continuing tort" doctrine to evade the statute of limitations fails because the last tortious act alleged occurred more than two years before suit was filed. *See Bhalli v. Methodist Hospital*, 896 S.W.2d 207, 209 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

Appellants next contend that Maryland cannot assert the limitations defense because it is personal to the Developers and the Developers did not raise it in the *Thompson* suit. Appellants rely on a number of uninsured motorist and secured transaction cases in support of this proposition. However, none of the cases cited by appellants supports their position.

First, appellants cite *Franco v. Allstate Insurance Co.*, 505 S.W.2d 789 (Tex.1974) and *United Services Automobile Ass'n v. Blakemore*, 782 S.W.2d 277 (Tex.App.—Waco 1989, writ denied) for the proposition that an insurer cannot assert a tortfeasor's statute of limitations defense. *Franco* involved a suit by insureds against their insurer for personal injuries and wrongful death caused by an uninsured motorist; the issue was which statute of limitations applied to the suit, the four-year period for contracts or the two-year period for torts. *See Franco*, 505 S.W.2d at 790. The supreme court recognized that the insurer, in defending its liability under the insurance contract, does not succeed to the right of the uninsured motorist to interpose the procedural defense of limitations which would be available to the motorist in a tort action. *See id.* at 792. In other words, the insurer cannot assert the

limitations period for torts when the suit against it sounds in contract. This reasoning does not support appellant's position in this case.

*Blakemore* was also a suit brought by an insured seeking contractual and tort damages from his automobile insurer's denial of uninsured motorist benefits following a collision with an uninsured driver. *See Blakemore*, 782 S.W.2d at 277–78. As in *Franco*, the insurance policy involved stated that the insured would pay damages that a covered person is "legally entitled to recover" from the operator of an uninsured vehicle. *See id.* at 278. Following *Franco*, the *Blakemore* court held that the term "legally entitled to recover" simply means that the insured must be able to show fault on the part of the uninsured motorist, and does not allow the insurer to impose a limitations defense that would have been available to the tortfeasor. *See id.* at 279 (citing *Franco*, 505 S.W.2d at 792).

Appellants argue that the same "legally entitled to recover" language appears in the policies at issue in this case, thus making the limitations rule in uninsured motorist cases applicable. We disagree. *Franco* and *Blakemore* are distinguishable from the instant case because uninsured motorist coverage arises from a first-party contractual relationship; unlike liability or indemnity coverage, it is not derived from a successful claim by a third party. Maryland did not attempt to invoke a limitations defense that would have been available to a third-party tortfeasor. Instead, it merely sought to assert the limitations defense available to *its own insured*. In addition, the contrived nature of the underlying lawsuit in this case distinguishes it from the uninsured motorist cases.

The secured transaction cases appellants cite also fail to support their position. For instance, appellants cite *Miller, Hiersche, Martens & Hayward, P.C. v. Bent Tree National Bank*, 894 S.W.2d 828 (Tex.App.—Dallas 1995, no writ) for the rule that a secured party may foreclose on collateral even though the underlying suit based on the debt would be barred by the statute of limitations. However, appellants' reliance on

*Miller* ignores the principles of the creditor-debtor relationship. If the debtor fails to satisfy the debt, the secured party keeps the collateral as full or partial satisfaction of the debt. The secured party expects to be able to retain the collateral if the debt is not satisfied; likewise, the debtor does not expect to keep the collateral in that circumstance. Allowing a debtor to assert a limitations defense to recover the collateral would eliminate the value of the security. No such relationship existed between the parties in this case. Thus, the nature of the creditor-debtor relationship makes secured transaction cases inapplicable to the present situation.

The trial court did not err in refusing to apply the "continuing tort" theory to the claims against Maryland arising from the 1973 flood; therefore, it also did not err in refusing to address the remaining issues in this case. Since appellants' factual and legal sufficiency challenges to the evidence on the limitations issue are entirely dependent on their "continuing tort" theory, we reject the arguments raised in their third issue as well.[13] Finally, the cases appellants cite do not support their theory that the limitations defense is personal to the Developers and therefore cannot be asserted by Maryland. The points of error raised in the second, third, and fourth issues are overruled.

In their brief, appellees raise two alternative independent grounds for affirming the trial-court judgment. First, appellees argue that the Homeowners did not establish coverage under the Maryland policies. Second, they assert that almost all of the Homeowners failed to prove damages under the Maryland policies. Appellees correctly note that because their arguments do not ask for greater relief than that granted by the trial court, they were not required to file a notice of appeal as a prerequisite to presenting these arguments. *See* Tex.R.App. P. 25.1(c). However, because we have ruled against appellants on all four of the issues they raised, we need not address appellees' alternative arguments in support of the trial-court judgment.

## CONCLUSION

Following *Gandy,* we hold that an agreed judgment as to liability between a third party and an insured is not binding on the insurer. The trial court correctly held that the judgment in the underlying *Thompson* suit is not binding on the parties and that the statute of limitations bars any relitigation of the Homeowner's suit against the Developers. We therefore affirm the trial-court judgment.

## APPENDIX A

### FIRST GENERAL REALTY CORP., ET AL

### VS.

### MARYLAND CASUALTY COMPANY, ET AL

### NO. 428,878

### IN THE DISTRICT COURT OF TRAVIS COUNTY, TEXAS 126TH JUDICIAL DISTRICT

*NOTICE OF APPEAL*

1. *Parties Perfecting the Appeal.* The following parties to the trial court proceedings in the above referenced cause desire to perfect an appeal from the trial court's final judgment in this cause:

a. Plaintiffs:

First General Realty Corporation

First Mortgage Company of Texas, Inc.

First General Realty Corporation and Pacific Gulf Investment Corporation d/b/a River Plantation Development Company, Inc.

First General Realty Corporation d/b/a River Plantation Development Company, Inc.

River Plantation Development Company, Inc.

---

13. To the extent that appellants bring any challenge to the sufficiency of the evidence that is independent of their "continuing tort" theory, they have not made any arguments or cited any cases to support it. Appellants have thus failed to properly brief any such challenge, and we will not address it. *See* Tex.R.App. P. 38.1(h).

b. Named Intervenors:

Joe L. Abney and Paula K. Abney

Victor R. Acheson and Mary J. Acheson

James Wesley Adams and Billie B. Adams

Joseph Albaum and Ann M. Albaum

Laurie R.D. Alexander

Larry G. Allen and Beverly A. Allen

Commander J.C. Allman, Jr.

Benjamin B. Amato and Veronica F. Amato

Howard W. Andersen and Stella Jo Andersen

Howard M. Anderson

Lillian R. Anderson

Steve Arnold

Eldon R. Baker and Herta M. Baker

George A. Bannantine

Marie M. Barnett as Independent Executrix for the Estate of Faye T. Stewart

Oscar Noel Barron

Don W. Barry and Polly S. Barry

Albert L. Batson

Roy A. Bauer and Sylvia Bauer

William H. Baugh

Edward P. Bausbacher

Edward B. Beckler

Remsen H. Beitel

Violet M. Bennett

Don C. Beutow and Mary L. Beutow

David C. Bianchi and Ann H. Bianchi

R. Arthur Bickel

Barry G. Blackburn and Ilene F. Blackburn

Edward Blackburne, Jr.

Cleve E. Blair

William C. Blakely and Ann N. Blakely

Melvin J. Blum and Virginia H. Blum

Paul Boone

Matthew F. Booth and Jean E. Booth

Harry Borkowski and Irene Borkowski

Nola Jean Boughton, individually and for the Estate of Richard A. Boughton

Anthony Boyle

J.A. Bozman

Douglas A. Brace and Camille M. Brace

Carl J. Brandon, Jr. and Hazel M. Brandon

Alfred R. Brenholts, Jr. as executor of the Estate of Alfred R. Brenholts, Sr.

Heloise S. Brenholts

Malcolm Brewer and Beverly Brewer

Knox M. Broom, Jr. and Margaret C. Broom

Doris Ann Brown

Merlyn E. Brown and Carol C. Brown

Randall H. Brown and Constance H. Brown

William E. Brubaker and Sharon F. Brubaker

David C. Bryan

Phil Bryson

Robert J. Bullock and Marie R. Bullock

Paul C. Bunch

Robert F. Burch and Barbara A. Burch

William C. Bybee and Dorothy J. Bybee

Dalton R. Byerly

Tommy L. Cano and Margaret Cano

Patricia Chambers

Eugene J. Chancy and Donna G. Chancy

Wanda Clapham, individually and on behalf of the Estate of Waldo Clapham

George Clark

Edwena Clement

Elizabeth Clark Coker

Marshall Compton and Hellen S. Compton

J.F. Conner

Andrew B. Cook and Betty B. Cook

Jerry L. Cook

Patsy A. Costa

Winifred H. Coterillo

Edward R. Cox and Karen L. Cox

Richard T. Cox and Patricia L. Cox

David Coyne

Ronald L. Craig and Marcella L. Craig

Timothy B. Crawford and Robin V. Crawford

Richard Crenwelge

Ernest L. Crumpacker and Anne B. Crumpacker

Jack R. Curtsinger and Melanie A. Curtsinger

Robert C. Darwin

Jack R. Davidson

James S. Davidson, III

Kenneth G. Davis and Katherine L. Davis

Richard Davis

Charles A. Day and Sylvia L. Day

G.J. Delscheff

Charles F. Denman and Carlene S. Denman

David W. Devine and Leona M. Devine

David P. Dewey and Riki F. Dewey

Dorothy E. Dietz

William H. Dietz

Terry Dill and Iris Dill

Jacqueline Dindot

Richard F. Dini

Gustave A. Ditchman and Susan M. Ditchman

James A. Dixon

Jerry V. Dixon and Sharon L. Dixon

George W. Donehoo, Jr.

Shirley J. Donehoo

Robert D. Donnell and Susan M. Donnell

John M. Donovan and Jacqueline T. Donovan

Kenneth D. Dooley and Frances A. Dooley

John R. Drackett Jr.

Louis J. Dressier and Ada D. Dressier

Kelton D. Drewery and Elizabethanne Drewery

William J. Driscoll and Karen A. Driscoll

John Druley and Cynthia Druley

James R. Dupuy and Mary G. Dupuy

Shirley Dunn

Michael A. East and Donna B. East

Julia M. Edwards

Carl D. Erickson and Sandra Erickson

William G. Erwin

Michael Falco and Francine Falco

Martin O. Fankhanel and Barbara D. Fankhanel

Frederick Rodney Fercho and Colene Fercho

Robert A. Feuer and Phyllis J. Feuer

Jack A. Fitch and Pamela J. Fitch

Maxine C. Fitzjarrell

Homer V. Flemming and Florence A. Flemming

James C. Forsman and Judith R. Forsman

F.E. Foss

Arthur W. Foster

Bruce H. Frazier

James F. Frazier

Kerry Galegher and Linda Galegher

Thomas A. Gallagher

Dorothy F. Gallegher

James M. Galup and Dianne M. Galup

Carlos Garcia

Robert K. Garrison and Alexis Garrison

Vergil R. Gerlach and Janice A. Gerlach

William G. Graham

Joseph H. Guadino and Mildred L. Guadino

Laurence E. Gill

Vance M. Gilmer and Reva H. Gilmer

John A. Godfrey, Jr. and Norma J. Godfrey

William G. Gorwood

Betty L. Granados

David Graumlich and Diana Graumlich

M. Jack Grimm

D.B. Gross

Ruben G. Guajardo

Arthur J. Guth and Mabel S. Guth

Gail R. Haack

Charles E. Haass and Mildred F. Haass

Harold J. Hagan and Sara J. Hagan

Christine McDonald Hall

Ralph Hamlin and Nancy Hamlin

James Hancock

Gerald E. Hansen

Bobby A. Hayes and Marjorie Lynn Hayes

Marvin J. Herb, President and Treasurer on behalf of Hondo Incorporated d/b/a Coca–Cola Bottling Co. of Chicago

**506**

Tildon J. Herbert and Carolyn B. Herbert

J. Ann Hess

Joanne Hill

John W. Hinson

Robert B. Holbrook and Christine R. Holbrook

E.M. Holder

Perry J. Holder and Iris S. Holder

Weldon Y. Holiway

John L. Hollansky and Jeannette A. Hollansky

Daniel K. Houlihan and Peggy Ann Houlihan

A.S. Hove and Beverly Hove

Ben F. Hughes and Judith F. Hughes

Sylvia A. Hull, individually and for the Estate of Robert A. Hull, deceased

Bonnie J. Hurn

William T. Hurn

Carolyn L. Ireland

J.C. Jacobsen

Kenneth H. Jacoby and Loretta E. Jacoby

Charles Jaggers

Lee Jemison and Georgene Jemison

R.E. Jensen and Helen E. Jensen

Richard James Johnson and Lois Rae Johnson

James K. Johnston and Rose M. Johnston

James L. Johnston and Melba J. Johnston

Helen Sue Jones

Mr. and Mrs. Paul Dewey Jones

Gail R. Jordan

Verne E. Jordan

Richard J. Judge and Delores B. Judge

Joseph D. Kain

Caryl S. Keir

William Kelleher and Betty Kelleher

Bruce W. Keppler and Margaret R. Keppler

Keith D. Kern and Cynthia Kern

David Kershinik

Donald M. Kilpatrick

Ernest Killingworth

John D. King/Benjamin Franklin Savings Property Management

Joe Kinnamon

Robert D. Kinney, III and Barbara L. Kinney

Donald M. Kirkpatrick

Thomas H. Kleene, Jr. and Sharon B. Kleene

William W. Klein and Lillian C. Klein

Mr. and Mrs. Paul Kovach

Marcus W. Krupala and Annette Krupala

Georgia Kuhn

Frank Kutach

John W. Landowski and Janet L. Landowski

Janet S. Landry

Leo M. Langlois and R. Eileen Langlois

Theodore F. Langworthy

Ronald C. Lassiter and Ella Lee Lassiter

Stephen Lawrence

Wiliam C. Leigh

Elwood I. Lentz and Clara F. Lentz

Charles H. Lewis, Jr. and Annie Cannon Lewis

Larry Lind

G.B. Lindsey and Stella Lindsey

James E. Lightner

Thomas L. Logan and Melba H. Logan

Charles P. Long

Homer A. Longino

Mr. and Mrs. Earl G. Lowry

Larry E. Lunger and Cathy Sue Lunger

Harold L. Lutenbacher and Imogene S. Lutenbacher

Leonard A. MacLaurin and Joan M. MacLaurin

J.A. Magness and Madeline S. Magness

Louis Eugene Mailhes and Eileen F. Mailhes

William L. Malone, Jr.

L.W. Mardaga and Anne M. Mardaga

Norris A. Marshall and Ann L. Marshall

David P. Martin, Trustee

R. Howard Mashburn and Nancy V. Mashburn

Jim Mayes

Walter D. Mayes and Ida F. Mayes

S.K. Maynard

Wallace Lionel McAfee, Jr. and Ella Marie McAfee

P.T. McBride and Lois McBride

James Lloyd McCollum and Barbara A. McCollum

Charlotte A. McCoy

Patsy C. McCrory

E.A. McDaniel and Evelyn McDaniel

Robert McDonald

A.N. McDowell

Cyril C. McKenna and June W. McKenna

Kirby G. McKillip and Carol J. McKillip

Thomas J. McLean and Sarah S. McLean

Robert McNiece

Richard G. McRae and Mariann R. McRae

Fred C. Meeks

M.D. Metts

Charles H. Meyer and Mary Lou Meyer

Douglas F. Miller and Sandra L. Miller

Robert E. Miller

Mr. and Mrs. David G. Mills

Serge P. Molohosky

John Allen Monroe

Joseph K. Moon, M.D.

Jimmy R. Moore and Jeannie K. Moore

E.D. Morrison and Josephine Morrison

Leroy E. Morrison

Edgar A. Morton

Jay M. Moter, Jr. and Pearl G. Moter

Benjamin H. Motion

Helen F. Motion

Manual T. Najar, Jr.

Violet M. Nelson

Anita Nemetz

George R. Nemetz

James H. Nettles

New Life Homes, Inc.

Michael A. Noble and Sandra J. Noble

James H. Norman

Dr. David Offutt

Ronald M. Oglesbee and Margaret G. Oglesbee

Frank T. Olson and Judy Olson

Howard L. Olson

Ted W. Oppel and Jo Oppel

Robert G. O'Rorke and Jean G. O'Rorke

John A. Pace

Richard S. Pace and Marge S. Pace

Carol S. Pangman

Ronald G. Parker and Mary Carole Parker

Billy B. Parson

Ronald L. Paul and Joyce G. Paul

Frank R. Peters

Susann Pennington

Sandra K. Pillow

Shirley H. Pippin

Betty F. Plank, individually and as independent executrix for the Estate of David O. Plank

H.W. Platt and Betty Platt

John Jos. Posey, Sr. and Virginia Fay Posey

Jesse C. Powell and Sandra Owen Powell

Lewis Powell and N. Faye Catron Powell

Beverly J. Pratt

William A. Preston, Jr. and Sharon L. Preston

J. Pyle, Jr.

Garrett John Quinlan III and Judith Ann Quinlan

Hector Ramirez

Carole Ramsey

Rudolph R. Razin and Edna E. Razin

Norma J. Reed

William F. Reed and Judith L. Reed

H.W. Reeves and Maurine G. Reeves

Robert David Reeves and Catherine Wilson Reeves

Frank M. Regan and Gloria L. Regan

Charles F. Reinhardt and Sharon A. Reinhardt

Robert S. Rexford

Robert J. Riley and Joyce L. Riley

Victor Riley

Paul G. Rivette and Merle W. Rivette

Jerry J. Roberts and Jan Roberts

Richard J. Roberts and Kathleen Roberts

Richard A. Rodenbush and Linda C. Rodenbush

Charles E. Roe

Larry M. Rolfe and Patricia Rushing Rolfe

Charles Rose

Kenneth M. Roth and Lillian Roth

Frank A. Ruffer and Mary Elizabeth Ruffer

Carson M. Russell and Merle Russell

Gay N. Rutherford

Michael J. Ryan

Harvey Schraeder and Madeline Schraeder

Thomas E. Schmidt and Barbara J. Schmidt

Don D. Schminkey and Carol L. Schminkey

Fred G. Seale, III and Fredricka M. Seale

James W. Sechler and Darlene R. Sechler

Robert W. Shelton and Carolyn G. Shelton

Donald R. Shepherd and Elizabeth P. Shepherd

Stanley Shoemaker

Calvin D. Sholtess and Frances L. Sholtess

Paul O. Sifferman and Louise E. Sifferman

Roy Simmons and Jan Simmons

Joyce M. Sims

Robert Sinchak

Stephen J. Sinclair and Mary D. Sinclair

Don T. Slape

Richard C. Slover

Archibald Smith and Dorothy A. Smith

Curtis K. Smith

Gordon A. Smith and Anne M. Smith

Paul L. Smith and H. Jane Smith

Virgel O. Smith and Alice W. Smith

Lorn J. Snow and Mary L. Snow

Jack E. Somerville

Gary. L. Standfield

Charles F. Stanley and Jonnie L Stanley

John A. Stark and Sandra H. Stark

C.L. Stephens

Rene P. St. Jean

Don Stocking and Susan Stocking

Howard Stockstill/Trademark Construction

Bill R. Storey

Ronnie O. Strickland and Stacie S. Strickland

Clara Gay Styers

John Joseph Termeer and Virginia Ann Termeer

Anne L. Thayer

Erma L. Thomas

James E. Thomas and Joyce D. Thomas

William E. Thomason and Rita K. Thomason

Robert Thompson

Russell G. Thompson and Beatrice E. Thompson

Three C Consulting, Inc.

Lawrence E. Tiernan, Jr. and Ann M. Tiernan

J.D. Tipton

C.T. Travis

Arthur J. Tuggle and Jarvis Tuggle

Robert P. Turnbull and Shirley A. Turnbull

Ralph E. Turner and Sylvia P. Turner

John E. Tuttle and Delores M. Tuttle

Weldon W. Tyson and Rita J. Tyson

Mario F. Urbano and Esther M. Urbano

Charles A. Van Derbur and Hazel M. VanDerbur

James R. Van Deusen and Neva Carol Van Deusen

Herbert W. Varner

Dara Vahabzadeh

Lawrence Vesel

Sandra E. Voigt

Victor O. Wagner and Enola M. Wagner

Albigence L. Waldo II and Carolyn Clark Waldo

Bill J. Walker and Evelyn Mozelle Walker

Luther B. Walker

Thomas E. Wallace and Nancy J. Wallace

S. Barry Warfield and Carol Lynn Warfield

William F. Warner

Ben I. Waters

J.D. Weaver, Jr.

Jody Weaver

Richard F. Webber and Harriett L. Webber

Samuel J. Weeks and Louise G. Weeks

Ronald C. Wendt and Jeannene Wendt

B.G. West

Richard A. West and Judith C. West

Don A. Wetzel

James J. White

William W. White and Norma C. White

Pauline Whittington, individually and as independent executrix for the Estate of V.G. Whittington, deceased

George H. Wickham II and Sue Wickham

Stephen G. Wiles and Theda R. Wiles

Buell R. Will

Jerry A. William

William Wilson and Ruth K. Wilson

Mary M. Turner Wingo

Thomas Wisner

Randolph Wortham

Donna D. Worthy

Dorothy W. Worthy

Chalmers D. Zimmeran and Judith A. Zimmerman

Dennis R. Zimmerman and Myrlene M. Zimmerman

Ronald K. Zimmerman

Robert G. Zirkle and Judith S. Zirkle

c. Unnamed Class Member Intervenors. Such unnamed Class Member Intervenors are judgment creditors of the underlying class action judgment rendered by the District Court of Montgomery County, Texas on May 3, 1991 in Cause No. 39,988, styled *"Russell G. Thompson, et al. vs. Walter Mischer Company, et al."*

All such parties shall hereinafter be referred to collectively as "Appellants".

2. *Final Judgment Appealed From.* Appellants desire to take an appeal from the Final Judgment rendered in the above styled and numbered cause on July 3, 1997.

3. *Notice of Appeal.* Pursuant to TEX. RULES OF APP. PROC. Rule 25.1(a), the Appellants listed above, who were Plaintiffs and Intervenors in the trial court, give notice of their appeal from the final judgment, signed on July 3, 1997, in Cause No. 428,878, *First General Realty Corporation et al vs. Maryland Casualty Company, et al.,* in the District Court of Travis County, 126th Judicial District, to the Court of Appeals for the Third District of Texas.

Respectfully submitted,

/s/ Ronald D. Wren

Ronald D. Wren
State Bar Number 22018400
1244 Harwood Road, Suite 220
Bedford, Texas 76021
(817) 540–6522 (metro)
Fax: (817) 540–0650 (metro)
ATTORNEY FOR APPELLANTS/
PLAINTIFFS AND INTERVENORS