NUMBER 13-03-741-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

 

ALFRED
PLOUGH, JR.,                                                                  Appellant,

 

                                                             v.

 

CECELIA
REYNOLDS,                                                          Appellee.

 

     On appeal
from the 105th District Court of Kleberg County, Texas.

 

 

                               MEMORANDUM
OPINION

 

                       Before
Justices Hinojosa, Yañez, and Castillo

                            Memorandum
Opinion by Justice Yañez

 

Following a bench trial, appellant, Alfred Plough,
Jr., appeals a trial court=s final 

judgment in favor of appellee, Cecelia Reynolds, on
her claims for trespass, nuisance, and conversion.  We affirm.

Background








In 1980, appellant sold appellee and her husband,
Marvin Reynolds, approximately five rural acres adjacent to his residence.  In 1988, appellee and Mr. Reynolds
constructed a home on their property with proceeds loaned to them by
appellant.  In 1993, appellee and Mr.
Reynolds filed for divorce.  The divorce
court ordered that the residence be sold, with instructions that the proceeds
be divided between them.  In accordance
with the order, appellee listed the residence for sale in 1993.  

Shortly after the court ordered the sale of the
residence, appellee began to experience financial difficulties.  As a result, she filed for bankruptcy on
three separate occasions in an attempt to prevent appellant from successfully
foreclosing on her residence.[1]
 Despite her bankruptcy filings which
prevented foreclosure, appellee claims appellant engaged in a series of
intentional, unlawful acts designed to drive her and her children from the
property, to force her to sell the property to appellant, and prevent her from
selling the property to a third party. 
As a result of appellant=s allegedly unlawful acts, which appellee claims
caused significant damage to her property, appellee filed suit on April 20,
2000 alleging trespass, nuisance, and conversion.  








In her pleadings, appellee alleged that from the
time she first filed bankruptcy to the time of filing her suit, appellant
and/or his agents engaged in the following unlawful conduct: (1) allowed other
individuals to live on her property, including allowing one of appellant=s relatives to reside in a trailer home unlawfully
parked on her property; (2) plowed up the sole road that provided ingress and
egress to her property; (3) cultivated crops on her property for profit; (4)
riddled her residence with bullets; (5) stole components of her residence=s air conditioning unit, rendering it unuseable; (6)
broke all the windows and destroyed the electrical system of her residence; (7)
committed forgery in one of her bankruptcy proceedings in an effort to obtain
title to the property; (8) destroyed the roof to her residence, causing water
damage to the interior; and (9) stole water and electricity from her
property.  Appellee further argued that
such acts rendered the residence uninhabitable, forcing her and her children to
ultimately move out of the residence.

During the bench trial held on April 25, 2003,
evidence was presented by both sides, including (1) photographs evidencing
significant vandalism to appellee=s residence, (2) photographs depicting the presence
of crops on appellee=s property, (3) a hand-written letter authored by
appellant and sent to the bankruptcy court questioning appellee=s right to claim the property as her homestead, (4)
a letter sent to appellee from appellant 
offering to purchase her property for $500, (5) photographs evidencing
that the road to appellee=s residence had been destroyed, (6) a May 16, 1995
letter from a real estate agent to appellee explaining that her residence was
not marketable due to its severely damaged condition, and (7) two police
reports confirming the occurrence of multiple instances of vandalism to
appellee=s residence. 

At the conclusion of the hearing, the court rendered
a final judgment in appellee=s favor and issued findings of fact and conclusions
of law in support of its judgment.  The
court awarded damages to appellee as follows: 
(1) $150,000 for the difference in market value of her property before
and after the damage; (2) $25,000 for destruction of the road; (3) $50,000 for
mental anguish; (4) $25,000 for lost rental value of the property; (5) $25,000
for conversion of the property; and (6) $12,000 for attorney fees at trial,
with an additional $5,000 for attorney fees on appeal, and $2,000 in attorney
fees in the event petition for review is granted by the Texas Supreme Court.








Issues on Appeal

Appellant challenges the trial court=s judgment awarding damages in favor of appellee.[2]   In particular, appellant contends (1)
appellee=s claims are barred by the statute of limitations;
(2) judicial estoppel precludes her from asserting her nuisance, trespass, and
conversion claims; and (3) the evidence is insufficient to support her claims
and the court=s award of damages. 


Standard of Review








In non-jury trials such as this, any party may
request the court to state in writing its findings of fact and conclusions of
law.[3]  When an appellant challenges a trial court's
findings of fact for legal sufficiency, we review those findings under the same
legal standard that we apply to the review of jury findings.[4]  We review a challenge to the trial court's
conclusions of law as a legal question, reviewing de novo the trial court's
application of the law to the facts.[5]   The trial court passes on the witnesses'
credibility and the weight given their testimony, and can reject or accept any
witness's testimony in whole or in part.[6]
 When the record contains conflicting
testimony, the appellate court must defer to the determination of the trial
court, who is the sole judge of the credibility of the witnesses.[7]


Statute of Limitations

In appellant=s first issue, he argues appellee=s claims for trespass, nuisance, and conversion are
barred by the two-year statute of limitations set forth in section 16.003 of
the Texas Civil Practice and Remedies Code. 
In contrast, appellee urges application of the continuing tort doctrine,
which she claims extended the running of the statute of limitations. 

Applicable Law

The statute of limitations for trespass to real
property, nuisance, and conversion is two years.[8]  Accrual of limitations is a question of law
for the court.[9]  Generally, a cause of action accrues and
limitations begin to run when facts exist that authorize a claimant to seek
judicial relief.[10]  In cases involving a nuisance, determining
when a claim accrues depends on whether the alleged nuisance is
"permanent" or "temporary."[11]  








In Schneider National Carriers, Inc. v. Bates,
a case involving damage to real property, the plaintiffs asserted multiple
claims for nuisance, trespass, negligence, negligence per se, negligent
endangerment, and gross negligence because of damages allegedly caused by air
pollutants emitted by an adjacent industrial site.[12]  Although multiple claims were advanced by the
plaintiffs, the Texas Supreme Court referred to the complained-of conditions as
Anuisances@ and for purposes of limitations analyzed whether
the nuisances were permanent or temporary.[13]  A nuisance may arise by causing (1) physical
harm to property, such as the encroachment of a damaging substance or the
property's destruction, (2) physical harm to a person on his property from an
assault on his senses or by other personal injury, and (3) emotional harm to a
person from the deprivation of the enjoyment of his property through fear,
apprehension, or loss of peace of mind.[14]  In this case, because the damage to appellee=s property is, in part, based on alleged nuisances,
for purposes of limitations we analyze whether the nuisances were temporary or
permanent.[15]

Temporary vs. Permanent 








Generally, a nuisance should be considered permanent
in nature if it arises from "an activity of such a character and existing
under such circumstances that it will be presumed to continue
indefinitely."[16]  Thus, a nuisance should be considered
permanent if it is "constant and continuous,"[17]
and if "injury constantly and regularly recurs."[18]  A permanent nuisance claim accrues when
injury first occurs or is discovered.[19]  An action for permanent damages to land must
be brought within two years from the time of discovery of the injury.[20]


In contrast, a nuisance should be considered
temporary if it is of limited duration.[21]  Thus, a nuisance may be considered temporary
if it is uncertain regarding whether any future injury will occur,[22]
or if future injury "is liable to occur only at long intervals."[23]  A nuisance is also temporary if it is
"occasional, intermittent or recurrent,"[24]
or "sporadic and contingent upon some irregular force such as rain.@[25]  Damages for
temporary injuries may be recovered for the two years prior to filing suit.[26]

Continuing Tort Doctrine








The continuing tort doctrine involves continuing
wrongful conduct and continuing injury.[27]  The continuing tort doctrine is an exception
to the discovery rule.[28]  Continuing torts create a separate cause of
action each day they exist. [29]  The doctrine provides that a cause of action
for a continuing tort does not accrue until that tortious conduct ceases.[30]  The continuing tort doctrine does not apply
when the injury is permanent.[31]  Thus, in this case, if appellee=s claims are for permanent injuries, the continuing
tort doctrine would not apply.[32]  Conversely, if her claims are temporary, the
continuing tort doctrine may operate to extend the limitations period.[33]


Analysis

In reviewing the record, we note that the trial
court=s final judgment recites, in relevant part: 

The court finds that [appellant] and his wife were
interested in acquiring the home of the [appellee] and began a scheme to interfere
with the sale that had been ordered by the divorce judgment of the court with
trespasses and interference with the use and possession of the property and
interfering with her access and use of the property and causing or allowing the
property to be destroyed by persons at their instance and direction and that
such scheme and trespasses is continuous and was still continuing at the time
of the filing of the lawsuit and at the time of trial and the first recognition
by [appellant] that his claim of 2 interest to the property was not sustainable and
such claim was not abandoned until the trial before this court.  That such actions are of a continuous nature
and not barred by limitations. . . 

 








The court further finds that the damage from the
trespass of the property which has been continuous and still continues resulted
in destruction of the road denying access and easement to [appellee] preventing
her from using the property.  That the
[appellant] used the property as his own and continues to do so, and that
separate damages are and should be awarded [for] such trespass. . . . 

 

The court further finds that the [appellant] has
unlawfully assumed dominion over [appellee=s] property inconsistent with her rights and
accordingly has converted her property and still occupies and converts her
property at the time of trial. . . . 

 

In its final judgment, the trial court did not
classify the nuisances at issue as permanent or temporary.  Nevertheless, the court determined that
appellant caused the nuisances.  

The record also contains two police reports, dated
May 10, 1994 and November 3, 1996, which were created after appellee reported
numerous acts of vandalism to her residence. 
The acts of vandalism to her residence included, but were not limited
to, broken windows, bullet holes in the roof and walls, and destruction and
removal of the electrical and air conditioning system.  

The May 10th report, authored by Sheriff Adam Munoz,
states, in relevant part

[appellee] said that she suspected [appellant] as
doing the damage to the house. . . .  I
told [appellee] that this case sounded to me as a civil matter . . . but that
she should contact an attorney about her case.    

 

The November 3, 1994 report  states, in pertinent part, A[Appellee] . . . observed a blue truck. . .on her
property, [appellant] was driving the vehicle . . . .  I then advised [appellee] that . . . she
needs to contact her lawyer to see what can be done about keeping him off the
property.@ 








At trial, appellee testified that the damage to her
residence and road occurred between the early 1990's and 2000.  She claimed that the road to her residence
existed and was functional in 1999. 
However, she testified that in 2000, she discovered that the road had
been plowed up, and that someone had been cultivating crops on her property without
her permission.

Appellee also introduced into evidence six
photographs showing the changed condition of her property.[34]  The photographs establish that from 1996 to
2003, crops were being grown and cultivated on appellee=s property. 
They also show that the road leading to her residence existed until
1999.  A photograph taken in 2003 shows
that the road was no longer present and had been replaced by weeds and grass,
thereby eliminating the only ingress and egress to appellee=s residence.

The record also contains a January 24, 1998
hand-written letter sent by appellant to the bankruptcy court that presided
over appellee=s third bankruptcy filing.  It states, in relevant part:

How can this property be claimed as a homestead when
I was in the field I [sic] heard the shooting around the house.  I drove to the house and noticed all windows
and doors had been shot out with a shot gun. 


 

I did not report the shooting to sheriff because
case was in bankruptcy.

 

How can it [sic] possible for [appellee] to file
bankruptcy while The [sic] house has been unlivable for the following reason.

 

1.  No water
meter

2.  No
sewerage system

3.  No windows

4.  No doors

5.  Holes in
the roof

 

 I pray that
Honorable Judge will dismiss this case.

                


Sincerely,

 

/s/ Alfred Plough [appellant]








Although the exact dates and frequency of the acts
of vandalism remain unknown,  we conclude
the photos introduced at trial, the police reports, and appellee=s testimony establish that the vandalism, which
caused the nuisances at issue, occurred on an occasional, intermittent basis up
to the time appellee filed suit.[35]  Additionally, because the nuisances were
caused by willful acts of vandalism, any prediction regarding whether any
future vandalism will occur remains uncertain because it is contingent upon
whether the vandal decides to commit future damage to appellee=s property.[36]  Because the nuisances occurred on an
occasional and intermittent basis, and because it is uncertain regarding
whether any future injury to appellee=s land will occur,[37]
we conclude, as a matter of law, that the nuisances on appellee=s property were temporary in nature.[38]  We next address whether the continuing tort
doctrine extended the limitations period. 








In this case, the vandalism involved repeated
wrongful conduct inflicted over a period of time.  Although the specific incidents of vandalism
were uncertain and occurred on an occasional basis, the police reports, appellee=s testimony, and the photographs of the property
establish that the nuisances were attributable to a series of wrongful conduct
that persisted up to 2003.  Because the
continuing tortious acts of vandalism persisted up to the time appellee filed
suit, we conclude appellee=s claims for nuisance, trespass, and conversion did
not accrue until the time she filed suit.[39]  

Although testimony conflicted regarding whether
appellant vandalized appellee=s property, we must give deference to the trial
court=s findings that are based on an evaluation of the
credibility and demeanor of the witnesses.[40]  The court heard the evidence and considered
testimony presented by both sides.  In
deference to the trial court=s findings of fact, we conclude that the evidence
supports the court=s determination that appellant and or his agents
caused the nuisances and resulting damage to appellee=s property.[41]  Accordingly, the first issue is overruled.

 

In a second issue, appellant contends appellee=s bankruptcy filings did not suspend the running of
the statute of limitations, and that judicial estoppel prevents her from
asserting her causes of action.  However,
appellant's brief contains no citations to the record regarding either
contention.  Accordingly, we conclude
appellant has presented nothing for this Court to review.[42]  Therefore,
this issue is overruled.








In a third issue, appellant contends generally that
the evidence is insufficient to support (1) appellee=s nuisance, trespass, and conversion claims, and (2)
the trial court=s award of damages. 
However, appellant has failed to present clear and concise arguments in
support of his sufficiency challenges regarding appellee=s causes of action and the court=s award of damages.[43]  Accordingly, we conclude he has inadequately
briefed this issue.[44]  Accordingly, we overrule appellant=s arguments.  

Conclusion

In light of our disposition regarding each of
appellant=s issues, the judgment of the trial court is
affirmed.  

 

                                                             
                                                        

        LINDA
REYNA YAÑEZ,

         
Justice

 

 

 

 

Memorandum
opinion delivered and filed 

this
the 9th day of February, 2006.

 

 

 

 

 

 











[1] 
Appellee=s bankruptcy filings occurred on
the following dates: October 1, 1993BCase No. 93-22188-C-13; March 6, 1995BCase No. 95-20549-C-13; September
24, 1996BCase No. 96-23866-C-13.





[2] 
Although appellant raises fifteen issues on appeal, for purposes of
brevity we have consolidated his points of error into three issues.  Accordingly, appellant=s first issue is addressed in issue
one.  His second and third issues are
addressed in issue two, and his fourth through fifteenth issues are
discussed in issue three.  See Seeley
v. Eaton, 506 S.W.2d 719, 721 (Tex. 2003). 





[3] 
See Tex. R. Civ. P. 296.  





[4] 
See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794
(Tex. 2002); Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). 





[5] 
See BMC Software Belg., 83 S.W.3d at 794.





[6] 
See Bocquet v. Herring, 972 S.W.2d 19, 22 (Tex. 1998).  





[7] 
See Maeberry v. Gayle, 955 S.W.2d 875, 880 (Tex. App.BCorpus Christi 1997, no pet.).





[8] 
See Tex. Civ. Prac. & Rem. Code Ann. ' 16.003(a) (Vernon 2002); Schneider
Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264, 270 (Tex. 2004). 





[9] 
See Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d
211, 221 (Tex. 2003).  





[10] 
See Schneider Nat'l Carriers, Inc., 147 S.W.3d at 279. 





[11] 
See id.





[12] 
See id. at
268. 





[13] 
See id. at
270.





[14] 
See Walton v. Phillips Petroleum Co., 65 S.W.3d 262, 270 (Tex.
App.BEl Paso 2001, pet. denied) (citing Nugent
v. Pilgrim's Pride Corp., 30 S.W.3d 562, 575 (Tex. App.BTexarkana 2000, pet. denied)).  





[15] 
See Schneider Nat'l Carriers, Inc., 147 S.W.3d at 270.





[16] 
See id. at
272 (citing Bayouth v. Lion Oil Co., 671 S.W.2d 867, 868 (Tex. 1984); Atlas
Chem. Indus., Inc. v. Anderson, 524 S.W.2d 681, 684 (Tex. 1975); Columbian
Carbon Co. v. Tholen, 199 S.W.2d 825, 826 (Tex. Civ. App.BGalveston 1947, writ ref'd)).





[17] 
See id.
(citing Bayouth, 671 S.W.2d at 868; Kraft v. Langford, 565 S.W.2d
223, 227 (Tex. 1978); Atlas, 524 S.W.2d at 684). 





[18] 
See id.
(citing Rosenthal v. Taylor, B. & H. Ry. Co., 15 S.W. 268,
269 (Tex. 1891)).        





[19] 
See id. at
270.





[20] 
See Bayouth, 671 S.W.2d at 868.





[21] 
See Schneider Nat'l Carriers, Inc., 147 S.W.3d at 272. 





[22] 
See id. (citing Baker v. City of Fort Worth, 210 S.W.2d
564, 567 (Tex. 1948)). 





[23] 
See id. (citing
Rosenthal, 15 S.W. at 269).  





[24] 
See id. (citing Bayouth, 671 S.W.2d at 868).





[25] 
See id. (citing Kraft, 565 S.W.2d at 227; Atlas Chem.
Indus., Inc., 524 S.W.2d at 684‑85).





[26] 
See Cook v. Exxon Corp., 145 S.W.3d 776, 783 (Tex. App.BTexarkana 2004, no pet.).  





[27] See Dickson Constr., Inc. v.
Fid. & Deposit Co. of Maryland, 960 S.W.2d 845, 851 (Tex. App.BTexarkana 1997, no writ). 





[28] 
See First Gen. Realty Corp. v. Md. Cas. Co., 981 S.W.2d 495, 501
(Tex. App.BAustin 1998, pet. denied) (op. on
reh'g).  





[29] 
See id.  





[30] 
See id.  





[31] 
See Walton,
65 S.W.3d at 275. 





[32] 
See id.





[33] 
See id. at
272-73.





[34] 
The photographs are marked as plaintiff=s exhibits ten through twelve.





[35] 
See Schneider Nat'l Carriers, Inc., 147 S.W.3d at 272; Maeberry,
955 S.W.2d at 880 (noting the deference afforded to a trial court=s evaluation of the credibility and
demeanor of witnesses). 





[36] 
See Schneider Nat'l Carriers, Inc., 147 S.W.3d at 272.





[37] 
See id. at 272 (citing Baker, 210 S.W.2d at 567). 





[38] 
See id. at 270-272.





[39] 
See W. W. Laubach Trust/The Georgetown Corp. v. The Georgetown Corp./W.
W. Laubach Trust,
80 S.W.3d 149, 155 (Tex. App.BAustin 2002, pet. denied).





[40] 
See Maeberry, 955 S.W.2d at 880.





[41] 
See id. 





[42] See Tex. R.
App P. 38.1(h) (AThe brief must contain a clear and
concise argument for the contentions made, with appropriate citations to authorities
and to the record.@).





[43] 
See id.





[44] 
See id.